Ben Miller, OSB #074690
BMiller@eugene-or.gov
Eugene City Attorney's Office
101 W. 10th Avenue, Suite 203
Eugene, OR 97401
Telephone: (541) 682-8447
Facsimile: (541) 682-5414

Of Attorneys for Defendants
Samuel Tykol and City of Eugene

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| **OFELIA HERNANDEZ SANTIAGO,**<br>Personal Representative of the Estate of<br>Eliborio Rodrigues Jr., | Case No: 6:21-cv-01715-MK |
| Plaintiff, | **DECLARATION OF SAMUEL TYKOL** |
| v. | **IN SUPPORT OF DEFENDANTS**<br>**SAMUEL TYKOL AND CITY OF**<br>**EUGENE'S MOTION FOR SUMMARY** |
| **SAMUEL TYKOL, JOHN DOE**<br>**SUPERVISORS 1-3, CITY OF EUGENE,**<br>a municipal subdivision of the State of Oregon, | **JUDGMENT** |
| Defendants. | |

The undersigned, Samuel Tykol, states as follows:

1. I am one of the defendants in this case and make this declaration in support of Defendants Samuel Tykol and City of Eugene's Motion for Summary Judgment. I have personal knowledge of, and I am competent to testify to the following information.

2. I am employed by the City of Eugene as a police officer in its Police Department. I am not a policymaker for the City of Eugene or the Eugene Police Department. I do not have final policymaking authority.

3. On November 30, 2019, I was working a patrol assignment when I attempted to contact an individual, later identified as Eliborio Rodrigues, who I observed walking within the roadway upon Acacia Street, Eugene, Oregon. Attached to my declaration as Exhibit 1 is a true

PAGE 1 – DECLARATION OF SAMUEL TYKOL IN SUPPORT OF DEFENDANTS
SAMUEL TYKOL AND CITY OF EUGENE'S MOTION FOR SUMMARY JUDGMENT

and correct copy of a relevant portion of the body-worn camera video recording from my person taken on November 30, 2019, depicting my initial encounter with Eliborio Rodrigues. I have viewed and listened to the relevant portions of this body-worn camera video recording, and it accurately recorded much of my interaction with Eliborio Rodrigues within the frame of view.

4.      I understand plaintiff alleges that I lacked any basis to stop Eliborio Rodrigues or to later detain or arrest him. That is incorrect. I observed Eliborio Rodrigues proceed along and upon Acacia Street where there was an adjacent usable sidewalk or shoulder, on November 30, 2019. I, therefore, had probable cause to stop Eliborio Rodrigues and investigate a violation of ORS 814.070(1)(a) or EC 4.830. I was authorized by ORS 153.039(3) to stop him and determine his identity, to conduct any investigation reasonable related to the observed violation, and to issue a citation. I was further authorized by ORS 153.039(1) and ORS 810.410(3)(f) to use the degree of force reasonably necessary to make the stop and ensure the safety of myself, the person stopped, or other persons present during my encounter with Eliborio Rodrigues.

5.      At the time of the stop I was in uniform and driving a marked patrol vehicle. Eliborio Rodrigues asked to speak with a sergeant which in addition indicated to me that he recognized I was a peace officer. I provided Eliborio Rodrigues several lawful orders to sit down, which he refused to follow, and so I then had probable cause to make an arrest under the 2019 versions of ORS 164.247(1)(b) or EC 4.907. Later, Eliborio Rodrigues engaged in actions which constituted resisting arrest under ORS 162.315(1) or EC 4.910(1), assault under ORS 163.175, 163.208 and EC 4.729, and disorderly conduct under ORS 166.025(1) or EC 4.725.

6.      I understand plaintiff alleges that I used excessive force in my attempt to detain Mr. Rodrigues and take him into custody and later in defense of my life. That is incorrect. I used only the amount of force which was reasonably necessary to effectively bring the incident under control, to attempt to effect an arrest, and to save my life.

7.      Prior to November 30, 2019, I had not met Mr. Rodrigues to the best of my knowledge. I did not know who he was and did not recognize him. My motivation in contacting Mr. Rodrigues was to address the violations of City and state law I had observed. I was not

motivated to take any action towards Mr. Rodrigues because I intended to cause him distress.

8. I understand plaintiff alleges the Eugene Police Department and/or the City of Eugene: 1) has a policy of allowing officers to shoot suspects when there is no threat of deadly force, open fire without warning and without an awareness of the totality of circumstances which would not justify such use of force; 2) trains officers to fail to be aware of proper legal standards including probable cause, arrest of individuals suspected of minor infractions or non-arrestable offenses, escalation of minor incident, passive resistance, foot pursuit, failure to call for support, failure to use common sense; and 3) has a policy and/or custom and/or practice of ratifying and approving unreasonable shooting deaths of citizens by City police officers without implementing methods and training necessary to prevent future deaths. That is incorrect. The City of Eugene has no such policies, customs or practices and does not train in the ways described.

9. On the contrary, the City has policies, customs and practices that officers may only utilize the amount of force that reasonably appears necessary, given the totality of the circumstances perceived by the officer at the time of the event, to effectively gain control of an incident. The City trains officers that any use of force must be objectively reasonable. In addition, the City has policies, customs and practices on de-escalation, crisis intervention techniques, preliminary investigations, response to calls, foot pursuits, and specific applications of force, such as control holds, OC aerosols, tasers and firearms.

10. In addition, I have been trained on police investigations and the need to establish probable cause before making an arrest. I have been trained on appropriate uses of force and techniques. I have been trained about constitutional protections for speech and protest activity. I have been trained that the Eugene Police Department expects its employees to provide equitable law enforcement services to the community with due regard for the protected class status of those served. I have been trained to provide equal protection under the law to the people I contact and provide it fairly and without discrimination or retaliation toward any individual, group or viewpoint. I have been trained that all Eugene Police employees are forbidden to engage in bias-based policing practices, retaliatory enforcement action, or excessive use of force.

11.	I understand that plaintiff alleges that the Eugene Police Department fails to adequately train, supervise, and discipline its sworn police officers. Specifically, I understand that plaintiff alleges the City: a) fails to train on how to de-escalate when the circumstances warrant it; b) fails to train officers to address the specific needs of the situation including modification of tactical response when dealing with mentally or emotionally impaired individuals; c) fails to train to obtain all critical information before use of extreme force; d) fails to train officers in the tactics to be used when a suspect fails to obey verbal instructions; e) fails to train officers in the proper and legal use of deadly force; e) fails to train in the proper use of OC spray against passively resistant suspects; f) fails to train officers on the rights of citizens to exercise their protected Constitutional rights, including the rights to refuse to answer questions or show identification; g) fails to train officers in the proper and legal use of tasers; h) fails to train in the use of force against passively resistant suspects; i) fails to train how to de-escalate a situation; and j) fails to properly train in the use of force against a compliant suspect. Again, that is incorrect. The City does not fail to train in any of these ways.

12.	All of the police officers who responded on November 30, 2019, were certified to serve as police officers by the Oregon Department of Public Safety Standards and Training. That means they underwent initial and annual training to the satisfaction of the state licensing body. In addition, they undergo annual Department training on uses of force, safely taking people into custody, investigations, de-escalation, control holds, taser use, OC aerosols, firearm use, and dealing with individuals in mental health crisis, among other topics.

13.	In addition, all sworn police officers are supervised by a chain of command within the Eugene Police Department. Officers receive feedback on their performance from supervisors, periodic performance reviews, and are subject to discipline for failure to follow policy or other misconduct. In my capacity as a police officer, I am supervised by a Sergeant, a Lieutenant, a Captain, a Deputy Chief, and Chief Skinner. I receive feedback. Often that feedback includes a review of my adherence to internal policies, my documentation of events, and an assessment of how I handled a situation. I also receive performance evaluations which are approved by the

chain of command.

14. I completed the Oregon Department of Public Safety Standards and Training Academy in 2016. The DPSST Academy included training on police investigations, probable cause for arrest, constitutionally protected activity, and use of force and defensive tactics. In addition, I received approximately 20 weeks of training by several Eugene Police Department Field Training Officers. I am also a member of the Eugene Police SWAT team, which I joined in 2018. In addition to the ongoing training I receive as a Police Officer, I also receive additional training as a SWAT team member, approximately twice a month for approximately 20 hours per month. I have continued to receive periodic training while employed by the Eugene Police Department, including legal updates on the elements of specific crimes, police investigation techniques, use of force, defensive tactics, de-escalation and use of deadly force. Attached to my declaration as Exhibit 2 is a true copy of my DPSST Public Safety Officer Records showing some of my training history through January 2023. Many of those training courses would have reviewed appropriate uses of force, safely taking people into custody, investigations, professional police contacts, de-escalation, use of control holds, use of tasers, use of OC aerosols, and use of firearms, among other topics.

15. During my career with the City of Eugene, I have been very well trained as a police officer in all areas of law enforcement, including the areas of the use of force, firearms, and defensive tactics. I was adequately trained to handle the duties and responsibilities of a patrol officer on November 30, 2019, and remain so adequately trained.

I declare under penalty of perjury that the foregoing is true and correct.

DATED this ___ day of August, 2023.

_____  16Aug23
Samuel Tykol

# CERTIFICATE OF SERVICE

I certify that on this 1st day of September, 2023, I served or caused to be served a true and complete copy of the foregoing **DECLARATION OF SAMUEL TYKOL IN SUPPORT OF DEFENDANTS SAMUEL TYKOL AND CITY OF EUGENE'S MOTION FOR SUMMARY JUDGMENT** on the party or parties listed below as follows:

**X**   Via CM / ECF Filing

**X**   Via First Class Mail, Postage Prepaid

____   Via Email

Michelle R. Burrows                Anthony Rosta
16869 SW 65th Ave #367             795 W 7th Ave
Lake Oswego, OR 97035              Eugene, OR 97402

Attorney for Plaintiff             Attorney for Plaintiff

**CITY OF EUGENE**

By: ___s/ Ben Miller_____
        Ben Miller, OSB #074690
        BMiller@eugene-or.gov
        Telephone: (541) 682-8447
        Facsimile:  (541) 682-5414

        Of Attorneys for Defendants
        Samuel Tykol and City of Eugene