**Ben Miller, OSB #074690**
**BMiller@eugene-or.gov**
Eugene City Attorney's Office
101 W. 10th Avenue, Suite 203
Eugene, OR 97401
Telephone: (541) 682-8447
Facsimile: (541) 682-5414

Of Attorneys for Defendants
Samuel Tykol and City of Eugene

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| **OFELIA HERNANDEZ SANTIAGO,** Personal Representative of the Estate of Eliborio Rodrigues Jr., <br><br> Plaintiff, <br><br> v. <br><br> **SAMUEL TYKOL, JOHN DOE SUPERVISORS 1-3, CITY OF EUGENE,** a municipal subdivision of the State of Oregon, <br><br> Defendants. | Case No: 6:21-cv-01715-MK <br><br><br> **DECLARATION OF CHIEF CHRIS SKINNER IN SUPPORT OF DEFENDANTS SAMUEL TYKOL AND CITY OF EUGENE'S MOTION FOR SUMMARY JUDGMENT** |

The undersigned, Chief Chris Skinner, states as follows:

1. I make this declaration in support of Defendants Samuel Tykol and City of Eugene's Motion for Summary Judgment. I have personal knowledge of and am competent to testify to the following information.

2. I am employed by the City of Eugene as the Chief of Police.

3. I understand plaintiff alleges the Eugene Police Department and/or the City of Eugene: 1) has a policy of allowing officers to shoot suspects when there is no threat of deadly force, open fire without warning and without an awareness of the totality of circumstances which would not justify such use of force; 2) trains officers to fail to be aware of proper legal standards including probable cause, arrest of individuals suspected of minor infractions or non-arrestable

PAGE 1 – DECLARATION OF CHIEF CHRIS SKINNER IN SUPPORT OF DEFENDANTS SAMUEL TYKOL AND CITY OF EUGENE'S MOTION FOR SUMMARY JUDGMENT

offenses, escalation of minor incident, passive resistance, foot pursuit, failure to call for support, failure to use common sense; and 3) has a policy and/or custom and/or practice of ratifying and approving unreasonable shooting deaths of citizens by City police officers without implementing methods and training necessary to prevent future deaths. That is incorrect. The City of Eugene has no such policies, customs or practices and does not train in the ways described.

4.     On the contrary, the City has policies, customs and practices that officers may only utilize the amount of force that reasonably appears necessary, given the totality of the circumstances perceived by the officer at the time of the event, to effectively gain control of an incident. The City has a policy against retaliation for protected activity, including retaliatory arrests or citations by its police officers. The City has a policy against excessive force by its police officers. The City trains its officers on police investigation techniques and the need to establish probable cause prior to making an arrest. The City trains officers that they are only allowed to make arrests or issue citations when supported by probable cause and to only use force when justified under the totality of circumstances, not out of a desire to chill anyone's freedom of expression. The City does not train officers that they are allowed to use more force than is constitutionally permitted. Rather, the City trains officers that any use of force must be objectively reasonable. In addition, the City has policies, customs and practices on de-escalation, crisis intervention techniques, preliminary investigations, response to calls, foot pursuits, and specific applications of force, such as control holds, OC aerosols, Tasers and firearms.

5.     The City does not encourage or acquiesce to unlawful behavior. To the contrary, the City has a policy of reviewing complaints of unlawful behavior against police officers through an internal affairs process and to impose discipline on police officers when the circumstances warrant the imposition of discipline under the City's policies. The City also has a policy of reviewing its own policies and modifying or updating them when required by local, state, or federal law or case updates, or when a new application of the policy reveals a need for modification or clarification. The City further has a policy of educating its police officers and supervisors about any modifications or updates to policy.

6. The City's policy is to ensure that its police officers are properly trained and supervised and to impose discipline on police officers when the circumstances warrant the imposition of discipline under the City's policies.

7. I was not physically present at the stop of Mr. Rodrigues on November 30, 2019, or in the vicinity. I understand plaintiff alleges that I directly, or through delegation, authorized excessive force. That is incorrect. I did not direct any use of force and was not in a position to know it was occurring or intervene. My expectation for officers in the field is that any force would only be employed when justified by the totality of circumstances and consistent with City policy, state law, and the state and federal Constitutions. I was aware that decisions to utilize force would be reviewed by the Eugene Police Department and/or the Eugene Police Auditor, and that decisions which violated policy could result in discipline.

8. The City trains its officers that protected speech activity or viewpoint can never be an impermissible factor in making decisions on who to arrest. The Eugene Police Department trains its officers on de-escalation techniques and the need to provide warnings prior to taking enforcement action or using force and to provide direction when practicable or feasible. The Eugene Police Department expects its employees to provide equitable law enforcement services to the community with due regard for the viewpoint or protected class status of those served. All Eugene Police employees are forbidden to engage in retaliatory enforcement actions, arrests without probable cause, excessive force, or viewpoint discrimination.

9. I did not ratify any excessive force, false arrest or other constitutional violations against Mr. Rodrigues. On the contrary, I reviewed the objective evidence assembled by IDFIT, the Lane County District Attorney's Office, and the Use of Deadly Force Review Board, I compared that to the policies which were subject to review, and I considered the recommendations of both the Use of Deadly Force Review Board and the City of Eugene Independent Police Auditor. The facts, as I understood them, supported a finding of within policy for Officer Tykol's actions.

10. I understand that plaintiff alleges that the Eugene Police Department fails to

adequately train, supervise, and discipline its sworn police officers. Specifically, I understand that plaintiff alleges the City: a) fails to train on how to de-escalate when the circumstances warrant it; b) fails to train officers to address the specific needs of the situation including modification of tactical response when dealing with mentally or emotionally impaired individuals; c) fails to train to obtain all critical information before use of extreme force; d) fails to train officers in the tactics to be used when a suspect fails to obey verbal instructions; e) fails to train officers in the proper and legal use of deadly force; e) fails to train in the proper use of OC spray against passively resistant suspects; f) fails to train officers on the rights of citizens to exercise their protected Constitutional rights, including the rights to refuse to answer questions or show identification; g) fails to train officers in the proper and legal use of Tasers; h) fails to train in the use of force against passively resistant suspects; i) fails to train how to de-escalate a situation; and j) fails to properly train in the use of force against a compliant suspect. Again, that is incorrect. The City does not fail to train in any of these ways.

11. All of the police officers who responded on November 30, 2019, were certified to serve as police officers by the Oregon Department of Public Safety Standards and Training. That means they underwent initial and annual training to the satisfaction of the state licensing body. In addition, they undergo annual Department training on legal updates, uses of force, safely taking people into custody, investigations, de-escalation, control holds, Taser use, OC aerosols, firearm use, and dealing with individuals in mental health crisis, among other topics.

I declare under penalty of perjury that the foregoing is true and correct.

DATED this ⟦17⟧ day of August, 2023.

Chris Skinner

# CERTIFICATE OF SERVICE

I certify that on this 1st day of September, 2023, I served or caused to be served a true and complete copy of the foregoing **DECLARATION OF CHIEF CHRIS SKINNER IN SUPPORT OF DEFENDANTS SAMUEL TYKOL AND CITY OF EUGENE'S MOTION FOR SUMMARY JUDGMENT** on the party or parties listed below as follows:

    **X**    Via CM / ECF Filing

    **X**    Via First Class Mail, Postage Prepaid

    \_\_\_\_\_    Via Email

| | |
|---|---|
| Michelle R. Burrows | Anthony Rosta |
| 16869 SW 65th Ave #367 | 795 W 7th Ave |
| Lake Oswego, OR 97035 | Eugene, OR 97402 |
| | |
| Attorney for Plaintiff | Attorney for Plaintiff |

## CITY OF EUGENE

By: \_\_\_\_s/ Ben Miller_____
    Ben Miller, OSB #074690
    BMiller@eugene-or.gov
    Telephone: (541) 682-8447
    Facsimile: (541) 682-5414

    Of Attorneys for Defendants
    Samuel Tykol and City of Eugene