EXHIBIT 6
Page 1 of 7

| POLICY |
| --- |
| **1203** |

| EFFECTIVE DATE 1-19-18 |
| --- |

# Eugene Police Department



# Body-Worn Video

### 1203.1 PURPOSE AND SCOPE

The appropriate use of an audio and video recording can provide valuable documentation of police officer interactions with members of the community. Audio and video recordings can be objective evidence to document criminal and traffic violations, enhance officer safety, provide a record of police officer interaction with persons who are stopped, and can assist in the timely resolution of inquiries and complaints. Nothing in this policy is intended to require an action that would compromise the safety of an officer or endanger a member of the public. This policy governs only the use of Body-Worn Video camera systems by Eugene Police Department members. For In-Car Video systems, see *Policy 1202 – Audio Video Recordings*.

### 1203.2 DEFINITIONS

**Audio/Video Recording:** A term used to describe an audio and/or video image captured through the use of a Body-Worn Video system (BWV).

**Activate:** To cause a video or audio recording to be made through an ICV, BWV system.

**Officer:** For the purposes of this policy, Officer means any sworn or animal welfare officer who is authorized or required to wear a BWV system, regardless of rank.

### 1203.3 PROCEDURES

Prior to using a BWV, officers shall receive Department-approved training on the operation, care and the Department's policy with the respect to the use of the system.

Safety of the officer and the public are always the primary considerations when contacting people, vehicles or investigating suspicious conditions. The ability to record is based upon the totality of the circumstances.

Officers shall not use personally-owned body-worn cameras (BWV), except with the written approval of the Chief of Police or his/her designee.

Detailed police reports are required, even when a camera witnesses the events. Police reports are the appropriate place to document the totality of the circumstances as the officer sensed and observed at the time of the incident.

COE 002142

EXHIBIT 6

Page 2 of 7

## 1203.4      BODY- WORN VIDEO SYSTEMS

BWV will be issued to all sworn uniformed personnel and animal welfare officers who are assigned to patrol operations. Any other personnel not normally assigned to the patrol division may be issued BWV by the Chief of Police or his/her designee. Any person not issued a BWV and is assigned to work a sworn uniform assignment, will check with the on-duty watch commander for availability of a BWV. Before going into service any officer equipped with a BWV system will properly equip him or herself to record audio and video in the field. Ensure the BWV system is functioning properly and check to ensure:

     a. Proper power
     b. Correct date and time stamp
     c. Correct camera orientation and freedom of obstruction
     d. System records both audio and video information

Any damage to the BWV system that prevents or encumbers its intended usage or capabilities will be reported to a supervisor who will report the damage through *Blue Team* and ensure the system is turned in for maintenance and returned to full function. If the BWV system malfunctions during a shift or if the officer is not equipped with a BWV system, the officer will notify a supervisor as soon as possible. No officer may attempt to alter, erase, modify, or tamper with data recorded by the BWV system.

At the end of the officer's assigned shift, he or she will follow the established procedures for uploading the captured video and audio images from their BWV system and make the images available for Department use. Upload will be conducted unless a supervisor approves of holding the upload until the next work period. Officers should review recordings of enforcement contacts when that review will help you prepare a written report.

A pool of BWV systems will be available for non-uniformed personnel to use at their discretion. The use of BWV should be considered for incidents such as off-site search warrant service and investigative interviews.

## 1203.5      PRIVACY AND ADVISEMENTS OF RECORDINGS

Community members *do not* have a reasonable expectation of privacy when talking with a police officer during the scope of the officer's official duties, even when contact occurs in a private residence. If the incident meets the requirements for utilization listed in §1203.7, a recording should be maintained; a recording will not be terminated simply at the demand of a community member.

Pursuant to ORS 165.540(1)(c), officers are required to provide notice the recording of voices and visual images are being made as soon as practicable; record this advice when possible. The only exception is when the recording is at a public meeting or rally, provided that the recording device is unconcealed.

Protecting the privacy of an undercover officer or a confidential informant, articulable officer safety concerns or exigency to act before a recording can be made are approved exceptions to not make or stop a recording.

## 1203.6      REDUNDANCY OF BWV AND ICV SYSTEMS

Body-Worn Video and its complimentary system, In-Car Video, capture the most information available for investigators and the courts when they are used in conjunction. However, there

COE 002143

EXHIBIT 6

Page 3 of 7

are times when not at the end of an incident whereby one of the two systems is recording superfluous information and may be turned off. There are no clear and bright lines dictating all circumstances when one system may be shut off; however, officers are allowed to select one of the two systems in situations where the camera view or information the camera would capture will not assist in the investigation or recreation of the incident. Examples would be an officer shutting off his or her ICV after the contact has made it well away from the police vehicle and all the ICV camera would capture is an uninvolved street scene or wall, or an officer temporarily turning off his or her BWV to drive a custody to jail and all the BWV system would capture is the officers view of the steering column and traffic.

## 1203.7 UTILIZATION REQUIREMENTS FOR BWV SYSTEM

### 1203.7.1 Required Recording
Officers must use the BWV system to record any of the following for its entire duration:
   a. Situations which officers have reasonable suspicion or probable cause that a person they are about to contact has committed or is about to commit a crime/violation. The camera must remain on until the contact has concluded.
   b. Stops for violations of the Oregon Vehicle Code (defined by ORS 810.410) whether it is for a vehicle (defined by ORS 801.590) or pedestrian.
   c. Investigative encounters with suspects, victims, witnesses, or complainants.
   d. Consensual encounters where an officer reasonably knows he or she will attempt to develop a reasonable suspicion of criminal activity about the subject encountered.
   e. Situations when a person is in custody and is either being detained or transported in the patrol vehicle. *This includes detentions in handcuffs while investigating whether or not a crime(s) have occurred.*
   f. Any contact you are directed to record by a sworn supervisor.

### 1203.7.2 Additional Recording
You may, at your discretion, also record:
   a. Other official law enforcement contacts (e.g., non-enforcement-related street encounters).
   b. Transport of a person not in custody.
   c. Stranded motorist assists.
   d. Any other duty-related activity, situation, or event which you believe, based on your experience and training, should be audibly and visually recorded
   e. Officers are strongly encouraged to record any encounter that does not meet the criteria of 1203.7.1(a) thru 1203.7.1(f), but where a person encountered directly alleges the contact, failure to provide police service, or investigation into that person is based upon bias by the officer.

### 1203.7.3 Termination of Recording
Make every reasonable effort to use the BWV system to capture events accurately and thoroughly, and always begin the recording as soon as practicable.

Once recording is initiated, do not terminate the video and audio recording until the event is complete, except for the circumstances listed in this policy. For purposes of this policy, an incident is considered complete when a reasonable person would consider the incident to have reached a logical ending, up to and including the transfer of a prisoner into the custody of another agency. For example, the point at which a jail deputy takes custody of the prisoner. Officers may terminate the recording before the incident is complete only:

EXHIBIT 6

Page 4 of 7

a. In an extended situation if you reasonably believe there is no value in collecting further data (e.g., traffic control at an accident scene).
b. To protect the anonymity of a confidential informant, undercover officers, or other confidential information sources.
c. Under circumstances where technical difficulties render the system inoperable; or
d. When authorized by a supervisor.

### 1203.7.4     Mute Function

The mute function may only be utilized to mute conversations between law enforcement personnel when such discussions involve strategy, tactics, or coaching/counselling. Video recording should not be terminated. Turn the audio recording function back on as soon as practicable.  Any time the mute function is utilized, officers are required to verbalize the purpose for the mute prior to activating the mute.

### 1203.7.5     Sensitive Interviews/Investigations

The video camera lens of the body worn system may be covered upon the request of a victim or witness if the video portion of the recording interferes with the ability to complete the investigation.  The system should remain active in order to record audio.  Examples of this may include a sex crime victim at the hospital, or a burglary victim in their home.

### 1203.7.6     Requirements If Recording Is Discontinued

If you discontinue recording before an incident is complete, verbally record your reason for discontinuing the recording. If the recording is discontinued and you cannot record that fact, send an e-mail to your supervisor prior to the end of your watch outlining the reason the recording was terminated and the incident for which the recording was incomplete (including the date and time of the incident).

### 1203.7.7     Data Entry

When uploading the BWV data, Officers should select the most applicable category for their video and enter the two digit year followed by six digit *incident* number with a dash separating the digits (e.g., 17-123456).

Any time follow-up is completed on an existing case, the eight digit *case* number must be manually entered into the "Title" field.  The format is the same two digit year followed by the six digit number (e.g., 17-123456).  In all other cases data entry into the "Title" field is voluntary.  It will default to a date and time which should be left if the field is not being modified.

If a BWV recording captures images of a reported incident use the marginal heading of **BWV/**, and include your user ID (e.g., CEPDMRL), and the exact date and time the recording was made, using the time stamp from the video file database in your report. Make every reasonable attempt to list all files recorded if multiple ICV or BWV-equipped units were recording a scene or event.

COE 002145

EXHIBIT 6

Page 5 of 7

## 1203.8    AUDIO & VIDEO RECORDINGS USAGE

### 1203.8.1    VIDEO SHARING

Officers may share video only when required for investigative purposes, and only to employees with an investigative need.

### 1203.8.2    COURT PROCEEDINGS AND ADMINISTRATIVE INTERVIEWS

Flag any incident for which you believe all or some of the recorded data should not be released due to its sensitive nature (e.g., sensitive intelligence data, revealing identity of confidential informant) or of any recorded incident which might be valuable for training purposes.

Prior to testifying in a court case where recorded data will be offered as evidence, you are encouraged to review the recording to ensure that it represents a true and accurate depiction of the incident (or portion thereof) which was recorded.

An employee who is to be interviewed by a supervisor or investigator about an incident which has been recorded by BWV will be afforded the opportunity to review applicable video files prior to being interviewed.

### 1203.8.2    TRAINING AND PUBLIC RELEASES

If recorded data is to be used for training purposes beyond a review by the involved employee(s), the person intending to use the data will ensure that any involved employee is notified of the intent to use the data for that purpose, and given the opportunity to raise an objection to such use. If an objection is raised by an involved employee, the ultimate decision as to whether or not to use the involved data will rest with the Chief of Police or designee. For purposes of this policy, "involved employee" means an employee who is individually identifiable.

If public records request for recorded data is received, the department Public Records Coordinator or designee will follow release guidelines in the Oregon Public Records Law including changes made to state law by House Bill 2571.

If the release of the recorded data is initiated by the department, these guidelines will be followed:
   a. If the release is being made to enlist the public's assistance in an ongoing investigation, the decision to release will normally be made by the lead investigator. A reasonable attempt will be made by the lead investigator or designee to notify any involved employee(s) prior to the release.  They will also consult with the records section for any considerations regarding the release of public records.
   b. If the release is being made for another reason (e.g., as an example of exemplary work), the PIO or designee will ensure that any involved employee is notified of the intent to use the data for that purpose, and given the opportunity to raise an objection to such use. If an objection is raised by an involved employee, the ultimate decision as to whether or not to use the involved data will rest with the Chief of Police or designee.

## 1203.9    AUDIO AND VIDEO DATA MANAGEMENT

COE 002146

EXHIBIT 6
Page 6 of 7

Video and audio recordings made using the BWV system will be safeguarded to ensure their integrity. Only designated department personnel will have access to the original BWV system digital file.

Any recording which is flagged as containing information relevant to a crime, violation, or actual or potential allegation of misconduct will be treated as evidence.

Recordings made are the property of this agency, and will not be released outside this agency except as authorized by Oregon Public Records Law, required by court order, otherwise provided for in this policy, or authorized by the Chief of Police or designee.

Recorded data will be maintained for at least the minimum length of time required by *OAR 166-200-0100*, and we will normally retain data for 190 days. Data from certain types of incidents will be retained for a longer period of time when needed.

| Description | Number of Days Retained |
| --- | --- |
| Uncategorized | Until Manually Deleted |
| PC Arrest | 1465 |
| CLC | 1465 |
| Traffic Collision | 190 |
| DUII | 1465 |
| No Evidentiary Value | 190 |
| Homicide / Felony Sex Crimes | Until Manually Deleted |
| OIS or Sensistive IA, ETC – Command View Only | Until Manually Deleted |
| Pending Review | Until Manually Deleted |
| Investigation N/E | 366 |
| Bicycle Stop N/E | 190 |
| Person Stop N/E | 190 |
| Traffic Stop N/E | 190 |
| UTC | 366 |
| Warrant Arrest | 251 |

## 1203.10 SUPERVISORY RESPONSIBILITIES

### 1203.10.1 PATROL SUPERVISORS

A supervisor has the authority to review recorded video of an incident involving an employee in his or her chain of command, or of an incident that he or she supervised, for purposes outlined in this policy. Field Training Officers may review recordings of their assigned recruit officer for training requirements and development. Officers may view the video of other officers' BWV recordings with the approval of his/her supervisor.

COE 002147

EXHIBIT 6
Page 7 of 7

If an incident discovered during video review is to be used as part of a formal evaluation of the employee, the video should be retained until the evaluation period is complete and used as part of the evaluation process.

Do not direct that the recording of an incident be discontinued, under the authority given in §1203.7 of this policy, except at a point after the post-incident investigation has begun. (For purposes of this policy, this point is the point at which the incident has concluded, and department personnel have begun to perform follow-up or investigative activities relevant to the incident.) This should be done only in an exceptional situation where the value of continuing the recording is clearly outweighed by other factors in the particular situation.

When an incident arises requiring the immediate retrieval of recorded data, remove (or oversee removal of) the recording device and ensure that it is submitted to evidence or turned over to authorized investigative personnel.

### 1203.10.2     INVESTIGATIONS SUPERVISORS

Investigations supervisors may review audio or video recordings relevant to an investigation being conducted.  An investigations supervisor may also authorize a detective to review audio and video relevant to that detective's investigation.

### 1203.10.3     BWV PROGRAM SUPERVISOR

The Program Supervisor will ensure that procedures are in place and followed to ensure integrity of the original data submitted.  He or she will stay abreast of changes in law, policy, and technology and will recommend changes when applicable.  The program supervisor will also ensure that program technical staff completes the following:
   a.  That authorized copies of recorded data are provided in a timely manner.
   b.  Ensure that data is purged after they have surpassed their retention periods.
   c.  That BWV equipment is repaired and serviced in a timely manner.

David N. James
Interim Police Executive Director

COE 002148