EXHIBIT 12
Page 1 of 4

| POLICY **808** | **Eugene Police Department** |  |
| --- | --- | --- |
| **EFFECTIVE DATE 8-04-14** | | |

Amended by CD20-014 to remove all references to Carotid Restraing.

# Handcuffing, Control Holds, & Impact Weapons

## 808.1 PURPOSE AND SCOPE

No policy, however specific, can substitute for good decision-making during use of force events. There is no way to specify the exact amount or type of force to be applied in a given situation. However, every member of the Department is expected to use this policy as a guideline for making well-informed and sound decisions in a professional and impartial manner, that are in accordance with *Policy 800 – Use of Force*. This policy provides guidelines for the use and reporting of handcuff techniques, control holds, and impact weapons.

## 808.2 HANDCUFFING

### 808.2.1 HANDCUFFING GENERALLY

The Department instructs its members in several basic handcuffing techniques officers may utilize during an arrest or custody situation. Whenever possible, these handcuffing techniques should be initiated behind appropriate cover, and preferably with another officer present to assist. While handcuffing a subject alone is not a violation of policy, it is encouraged that officers delay a handcuffing event until another officer arrives to assist. Any reference to "handcuffing" or "handcuffs" can be considered synonymous with "the application of Flexcuffs" or "Flexcuffs."

Only members of the Eugene Police Department who are trained in the use of handcuffing may apply handcuffs or restraints to any person.

Although handcuffing is instructed to be a deliberate and sequential operation, the department recognizes that handcuffing can take on exigency based upon a number of factors. All handcuffing events should be subsequently inspected for tightness and proper fit when the situation becomes stable enough to do so.

It is at the discretion of the officer whether or not they handcuff a subject in front of their body, apply a waist chain, and/or ankle restraints.

Officers should take every reasonable step to minimize the time a subject is detained in handcuffs.

### 808.2.2 HANDCUFFING PREGNANT FEMALES, JUVENILES, AND INJURED PERSONS

When making decisions on where and how to handcuff a subject, officers should keep these considerations in mind:

COE 002116

EXHIBIT 12

Page 2 of 4

a. The circumstances leading to the custody situation or arrest.
b. The demeanor of the subject to be arrested.
c. The age, health, and sex of the person to be arrested.
d. Whether or not the person has any apparent disability or potential for injury from handcuffing.

Females who are known to be pregnant should be restrained in the least restrictive manner that still maintains officer safety. Officers may, on a case-by-case basis, secure a pregnant female in handcuffs in front of the waist.

Generally, officers should not handcuff a juvenile under the age of 15, unless the juvenile is suspected of a violent felony, or when the officer has a reasonable suspicion that the juvenile may continue to be a threat to themselves or others, or will significantly damage property.

### 808.2.3        REPORTING HANDCUFFING DETENTIONS

Once handcuffing is complete, officers should make all reasonable efforts to inspect the handcuffs for proper fit and check for appropriate tightness and note it in their reports. A check for proper fit and tightness can be completed by performing the "pinch gap test," where the officer inspects for enough room for his or her index finger and thumb to come together between the handcuffs while applied to the subject's wrist, and that the handcuffs do not seat themselves too high on the wrist and/or lower arm of the subject.

Handcuff detentions should be reported in the following manner:
- Notify dispatch via police radio anytime a person is detained in handcuffs.
- If the person is arrested or if a report is to be otherwise generated, note the detention and duration in the narrative.
- If no report is to be generated (no investigation, etc.) add a CAD detail to the call indicating the subject's name, DOB, and the detention period.

## 808.3    CONTROL HOLDS

Control holds are techniques designed to temporarily disable or stop a subject's resistance or flight without causing death or serious physical injury. Officers who employ control holds are expected to use them as needed to safely and effectively bring an incident under control consistent with the *Policy 800 - Use of Force* and the training they have received from the department.

When reasonable under the totality of the circumstances, the officer may use control holds that he or she has been trained by the department to properly apply. Control holds include pressure points, joint locks, hair holds, takedowns.

Officers may only use control holds to the degree necessary and reasonable under the totality of the circumstances to overcome the resistance of a suspect, or to prevent escalation of a custody situation that could endanger officers, the arrested person, or others.

### 808.3.1        PAIN COMPLIANCE

Pain compliance techniques may be very effective in controlling a passive, static or actively resisting individual. Officers may only apply those pain compliance techniques for which the officer has received department-approved training and only when the officer reasonably believes that the use of such a technique appears necessary to further a

COE 002117

EXHIBIT 12

Page 3 of 4

legitimate law enforcement purpose. Officers using any pain compliance technique should consider the totality of the circumstances including, but not limited to:

a. The potential for injury to the officer(s) or others if the technique is not used.

b. The potential risk of injury to the individual being controlled.

c. The degree to which the pain compliance technique may be controlled during application according to the level of resistance.

d. The nature of the offense involved.

e. The level of resistance by the individual(s) involved.

f. The need for prompt resolution of the situation.

g. If time permits, other reasonable alternatives.

The application of any pain compliance technique will be discontinued once the officer determines that compliance has been achieved, or if the compliance technique(s) is proving ineffective.

## 808.4    IMPACT WEAPONS

Department-approved impact weapons (ASP Baton, PR-24) may be used:

- To overcome resistance by a person being taken into custody.
- To protect the officer or another person against the use of force or an imminent threat of the use of force.
- As a reasonable use of force during crowd control activities.

Impact weapons should not be used to strike persons engaged only in passive resistance, nor shall impact weapons be used punitively, or to intimidate or coerce subjects into doing anything, except to overcome their resistance to being taken into custody.

Striking a subject in the head or neck can potentially cause serious physical injury or death and therefore an intentional impact weapon strike to the head or neck is only authorized in situations where deadly force is warranted.

Officers may only use extended-range impact weapons (40mm sponge round) in which they have been trained.  The extended-range impact weapon system should not be deployed by an individual officer without lethal cover, or without a tactical plan.

Only factory-loaded and department purchased and issued ammunition will be used with extended-range impact weapons.

Officers should not deploy the extended-range impact weapons in a situation where the suspect is in danger of falling from a significant height, unless deadly physical force is authorized.

COE 002118

EXHIBIT 12
Page 4 of 4

Extended-range impact weapons should not be used for crowd dispersal unless an immediate risk of injury or significant property damage exists and the deployment of the extended-range impact weapon can prevent it.

## 808.5    TEAR GAS

Tear gas may be used for crowd control and dispersal of unlawful or riotous assemblies, or against barricaded subjects based on the circumstances. Only a sworn supervisor may authorize the delivery and use of tear gas, and only after evaluating all conditions known at the time and determining that such force reasonably appears justified and necessary and that all other less-invasive crowd dispersal methods have been considered.  Officers delegated to deploy tear gas by the supervisor should have a familiarization with the CS canister before deploying the canister.

When practicable, amplified verbal admonishments to the unlawful or riotous assemblages will be made before tear gas is deployed.

When practicable, fire personnel should be alerted or summoned to stage near the scene prior to the deployment of tear gas to control any fires and to assist in providing medical aid evacuation if needed.

## 808.6    TRAINING

The Office of Professional Standards Lieutenant, in conjunction with the defensive tactics sergeant, rangemaster sergeant, and training sergeant, will ensure that officers and supervisors receive annual training on the aforementioned topics of handcuffing, control holds, and impact weapons.

COE 002119