EXHIBIT 13
Page 1 of 8

<table>
<tr><td>POLICY<br>**810**</td><td rowspan="2">**Eugene<br>Police Department**</td><td rowspan="2"></td></tr>
<tr><td>EFFECTIVE<br>DATE<br>9-29-14</td></tr>
</table>

# Use of Deadly Force (UDF) Investigations

## 810.1 PURPOSE AND SCOPE

To establish policy and procedures for the investigation of an incident in which police use of deadly force (UDF) has resulted in death or serious physical injury to a person. The intent of this policy is to ensure that such incidents be investigated in a fair and impartial manner. This policy includes requirements found in ORS 181.781 *et seq.*, and the Lane County *Deadly Physical Force Plan*.

Nothing in this policy is intended to increase, modify, or in any way affect the current legal standards, nor will any deviation from these guidelines be considered a breach of any legal standard.

### 810.1.1 DEFINITIONS

**Deadly Physical Force Plan (DPFP)**: The Lane County *Deadly Physical Force Plan* developed by the Lane County Use of Deadly Physical Force Planning Authority and related document(s) (e.g., IDFIT Memorandum of Understanding).

**IDFIT**: Lane County Interagency Deadly Force Investigations Team.

**Involved Officer**: An officer whose official conduct, or official order, was the cause in fact of the death or serious physical injury of a person. This term also applies to an officer whose conduct was not the cause of the death or serious physical injury, but who was involved in the incident before or during the use of deadly physical force, and this involvement was reasonably likely to expose the officer to a heightened level of stress or trauma.

**Public Safety Statement:** A formal, compelled statement, taken from involved officers by a scene supervisor for the purpose of identifying facts critical to the effective investigation of an officer-involved shooting and preservation of the safety of the public.

## 810.2 TYPES OF INVESTIGATIONS AND JURISDICTION

Uses of deadly force that result in death or serious physical injury by police involve several separate investigations. The investigations are summarized in the following chart:

COE 002126

EXHIBIT 13

Page 2 of 8

**UDF INVESTIGATION MATRIX**

|  | Criminal Investigation of Suspect(s) Conduct | Criminal Investigation of Officer(s) Conduct | Civil Investigation (Potential Liability) | Administrative Investigation (Compliance with Policy) |
|---|---|---|---|---|
| **EPD officer in Eugene** | EPD (unless relinquished to another agency by Chief of Police) | IDFIT and District Attorney's Office | EPD Civil Liability Team | EPD Internal Affairs |
| **Other agency officer in Eugene** | EPD (unless relinquished to another agency by Chief of Police) | IDFIT and District Attorney's Office | Involved officer's agency | Involved officer's agency |
| **EPD officer in other jurisdiction** | Agency where incident occurred (unless relinquished to another agency by Chief of Police) | OIS (Officer Involved Shooting)/UDF protocol dictated by county where incident occurred | EPD Civil Liability Team | EPD Internal Affairs |

The Department may utilize its own resources if a use of deadly physical force results only in physical injury.

## 810.3 THE INVESTIGATION PROCESS

The following procedures are guidelines used in the investigation of a police use of deadly force covered by this policy.

### 810.3.1 DUTIES OF INITIAL ON-SCENE SUPERVISOR

Upon arrival at the scene of the incident, the first uninvolved supervisor will assume the role of Incident Commander (until relinquished to another command officer or supervisor) and should ensure the following are addressed as soon as practicable:

(a) Take all reasonable steps to obtain emergency medical attention for all apparently injured individuals.

(b) As soon as sufficient additional officers are on scene, relieve any involved officer of his or her duties and assign those duties to an uninvolved employee.

(c) Ensure that the crime scene is completely identified and secure, and managed consistent with any other major crime scene.

(d) Obtain a Public Safety Statement from all involved officers. See *Use of Force Policy 810 Appendix A.*

(e) Normally, an officer will be assigned to accompany and assist an involved officer. The involved officer should not discuss the incident with this person except as outlined in Section § 810.4.5.

EXHIBIT 13

Page 3 of 8

(g)　　Provide all available information to the Watch Commander and dispatch. If feasible, sensitive information should be communicated over secure networks.

(i)　　As soon as practical, involved officers should be offered an opportunity for a medical examination and, if none is needed, respond or be transported (separately, if feasible) to the station for further direction.

　　1.　　Each involved officer should be given an administrative order not to discuss the incident with other involved officers pending further direction from a supervisor.

　　2.　　If the incident is a shooting, the duty weapon of any officer who fired his or her weapon, or who was in the vicinity when weapons were fired, will be seized by investigators. When an officer's weapon is taken or left at the scene (e.g., evidence), the officer will be provided with a comparable replacement weapon or be accompanied by an armed officer.

(k)　　Ensure that involved officers are instructed to refrain from making public statements about the investigation until such time as the investigation has been concluded and the District Attorney has made a determination regarding the criminal responsibility of all involved persons.

### 810.3.2　　WATCH COMMANDER DUTIES

Upon learning of a UDF incident covered by this policy, the Watch Commander will normally assume incident command and will be responsible for coordinating all aspects of the incident until relieved by a person of higher rank than the Watch Commander. The IDFIT supervisor will assist in defining the portion of the crime scene that they want the WC's assistance in managing, if any.

### 810.3.3　　NOTIFICATIONS

- Investigations Section Lieutenant (who may assist in IDFIT notification)
- IDFIT
- Patrol Captain(s)
- Chief of Police
- District Attorney, Chief Deputy, or other Senior DDA
- PIO
- Lieutenant, Office of Professional Standards
- Officer Union representative (if requested)
- Police Auditor
- Psychological/Peer support personnel

The Office of Professional Standards will ensure that the Risk Manager and City Attorney are notified when required.

After consultation with the involved officer(s), the officer(s) or the Department will notify the officer's family.

In order to avoid a family member of an involved officer hearing about the incident from a non-EPD official, officers who are not involved, but need to reassure family of their welfare, should not discuss details of the case or event with family. Notifications of involved employee's family should not be delayed unreasonably. Media interest and presence may impact the timeliness of these notifications.

All outside inquiries about the incident will be directed to the Watch Commander or PIO.

COE 002128

EXHIBIT 13

Page 4 of 8

### 810.3.4     MEDIA RELATIONS

A single press release will be prepared with input and concurrence from the supervisor and agency representative responsible for each phase of the investigation. This release will include information about the time and place of the incident, the condition of any suspect, and the nature of the use of deadly force, and will be available to the Watch Commander, Investigations Division Manager, and Public Information Officer in the event of inquiries from the media.

It will be the policy of this department to not release the identities of involved officers absent their consent or as required by law. Moreover, no involved officer will be subjected to contact from the media and no involved officer will make any comments to the press unless authorized by the Chief of Police or designee.

A request for information regarding an incident which occurred in another agency's jurisdiction will be referred to the agency of jurisdiction.

### 810.3.5     INVOLVED OFFICERS

Once the involved officer(s) have arrived at the Police Headquarters, Union Office, Hospital, or any other safe, secure and neutral environment that has the resources to deal with the officers physical and emotional well-being the involved officer(s) will be told who will be conducting the investigation as soon as practical.  The following will be considered for the involved officer (ORS 181.789):

(a)     Any request for department or legal representation will be accommodated and the officer will be provided with a location where s/he can confer privately with such representative(s). However, involved officers will not be permitted to meet collectively or in a group with an attorney or any representative prior to providing a formal interview or report.

(b)     Discussions with licensed attorneys will be considered privileged as attorney-client communication.

(c)     Discussions with department representatives (e.g., employee association) will be privileged only as to the discussion of non-criminal information.

(d)     Communications with peer counselors are confidential and may not be disclosed by any person participating in the peer support counseling session (ORS 181.860). To be considered confidential communications under the statute, the peer counselor must:
        1.     Have been designated by a law enforcement agency or employee assistance program to act as a peer counselor, and
        2.     Have received training in counseling and in providing emotional and moral support to public safety personnel or emergency services personnel who have been involved in emotionally traumatic incidents by reason of their employment.

(e)     Officers should not unnecessarily handle any item of potential evidentiary value, and care should be taken to preserve the integrity of any physical evidence present on the officer, equipment, and clothing (e.g., blood, fingerprints) until investigators or lab personnel can properly retrieve it.

(f)     A formal interview with an involved officer who discharged a firearm during a use of deadly force incident which results in death or serious physical injury will occur after a reasonable period of time to prepare for the interview, and will take into account the emotional and physical state of the officer.  This interview will occur no sooner than 48 hours after the incident, unless

COE 002129

EXHIBIT 13

Page 5 of 8

this waiting period is waived by the officer.  This waiting period does not preclude an initial on-scene conversation with the officer to assess and make an initial evaluation of the incident.

(g)	Each involved officer will be given reasonable paid administrative leave following a UDF incident covered by this policy.  Officers who use deadly physical force that results in the death of a person will not be returned to duties that might place an officer in a situation in which he or she has to use deadly force until at least 72 hours immediately following the incident.  It will be the responsibility of the Watch Commander or Scheduling Supervisor to make schedule adjustments to accommodate such leave.

(h)	Any officer involved in discharging his/her firearm that results in death or serious physical injury to a person will immediately be placed on administrative leave until such time as sufficient information exists to determine the justification for the use of deadly physical force, and that the officer has had an opportunity for mental health counseling with an outcome that there are no issues that would preclude the officer from performing the duties of a police officer.

(i)	The Chief of Police or designee will assign a supervisor to keep any involved officer apprised of the progress of the investigations.

(j)	Within 6 months following the incident, any involved officer will be given a minimum of two opportunities for mental health counseling.  The officer is required by Oregon law to attend at least one session (ORS 181.789(3)(b)). The Lieutenant in the Office of Professional Standards will be responsible for the necessary notifications and arrangements.
	1.	Interviews with a licensed mental health professional will be considered privileged and will not be disclosed except to the extent that the officer is or is not fit for return to duty.
	2.	An interview or session with a licensed mental health professional may take place prior to the involved officer providing a formal interview or report, but the involved officers will not be permitted to consult or meet collectively or in a group with a licensed mental health professional prior to providing a formal interview or report.

## 810.4	UDF INCIDENT CRIMINAL INVESTIGATION
### 810.4.1	INVESTIGATIONS PERSONNEL
Once notified of a UDF incident covered by this policy, it will be the responsibility of the Investigations Section Lieutenant to assign appropriate detective personnel to handle the investigation of related crimes in compliance with the IDFIT Memorandum of Understanding. Detectives will be assigned to work with the District Attorney's Office and may be assigned to separately handle the investigation of any related crimes not being investigated under the direction of the District Attorney's Office.

All related departmental reports except administrative and/or privileged reports will be forwarded to the designated detective supervisor for approval. Privileged reports will be maintained exclusively by those personnel authorized such access. Administrative reports will be forwarded to the appropriate Division Manager.

### 810.4.2	CRIMINAL INVESTIGATION PROCEDURE
It is the policy of this department to utilize the District Attorney's Office to provide guidance in a criminal investigation into the circumstances of any UDF incident involving injury or death.

COE 002130

EXHIBIT 13

Page 6 of 8

If available, detective personnel from this department may be assigned to "partner" with investigators from the interagency investigative team so as to not duplicate efforts in related criminal investigations.

Once the Public Safety Statements have been addressed, criminal investigators will be given the next opportunity to interview involved officers in order to provide them with an opportunity to give a voluntary statement. The following will be considered for the involved officer:

(a)     Supervisors and Internal Affairs Unit personnel should not participate directly in any voluntary interview of officers.

(b)     If requested, any involved officer will be afforded the opportunity to consult individually with a representative of his or her choosing or an attorney, prior to speaking with criminal investigators. However, in order to maintain the integrity of each individual officer's statement, involved officers will not consult or meet with a representative or attorney collectively or in groups prior to being interviewed.

(c)     Any voluntary statement provided by the officer(s) will be made available for inclusion in the administrative or other related investigations.

(d)     Absent consent from the involved officer or as required by law, no administratively coerced statement(s) will be provided to any criminal investigators.

### 810.4.3     REPORTS BY INVOLVED OFFICERS
In the event that suspects remain outstanding or subject to prosecution for related offenses, this department will retain the authority to require involved officers to provide sufficient information for related criminal reports to facilitate the apprehension and prosecution of those individuals.

While the involved officer may write the report, it is generally recommended that such reports be completed by assigned investigators who should interview involved officers as victims/witnesses. Since the purpose of these reports will be to facilitate criminal prosecution, statements of involved officers should focus on evidence to establish the elements of criminal activities by involved suspects. Care should be taken not to duplicate information provided by involved officers in other reports.

Nothing in this section will be construed to deprive an involved officer of the right to consult with legal counsel prior to completing any such criminal report.

Reports related to the prosecution of criminal suspects will be processed according to normal procedures, but should also be included for reference in the investigation of the UDF incident.

### 810.4.4     WITNESS IDENTIFICATION AND INTERVIEWS
Because potential witnesses to a UDF incident or other major incident may be lost or the integrity of their statements compromised with the passage of time, a supervisor should take reasonable steps to promptly coordinate with criminal investigators to utilize available personnel for the following:

(a)     Identify all persons present at the scene and in the immediate area.
        1.     When feasible, a recorded statement should be obtained from those persons who claim not to have witnessed the incident but who were present at the time it occurred.

EXHIBIT 13

Page 7 of 8

2.      Any potential witness who is unwilling or unable to remain available for a formal interview should not be detained absent reasonable suspicion to detain or probable cause to arrest. Without detaining the individual for the sole purpose of identification, officers should attempt to identify the witness prior to his/her departure.

(b)      Witnesses who are willing to provide a formal interview should be asked to meet at a suitable location where criminal investigators may obtain a recorded statement.

1.      Such witnesses, if willing, may be transported by department personnel.

2.      A written, verbal, or recorded statement of consent should be obtained prior to transporting a witness in a department vehicle.

3.      When the witness is a juvenile, reasonable effort must be made to obtain consent from the parent or guardian prior to transportation or a formal interview of the juvenile.  If these efforts are unsuccessful prior to transporting or interviewing the juvenile, the officer (or his or her representative) will make reasonable efforts to attempt to contact the juvenile's parent/guardian in order to explain the situation and what transpired during the transportation and/or interview.

(c)      Available personnel should be assigned to promptly contact the suspect's family and associates to obtain any available and untainted background information about the suspect's activities and state of mind prior to contact with officers.

## 810.5      ADMINISTRATIVE INVESTIGATION

In addition to all other investigations associated with a UDF incident, this department will conduct an internal administrative investigation to determine conformance with department policy. This investigation will be conducted under the supervision of the Internal Affairs Unit and will be considered a part of the confidential peace officer personnel file.

(a)      Any officer involved in a UDF incident will be offered the opportunity to provide a blood sample for alcohol/drug screening. If there is reasonable suspicion that the officer was under the influence of alcohol or a controlled substance, the officer may be administratively compelled to provide a blood sample.  Absent consent from the officer, such compelled samples and the results of any such testing will not be disclosed to any criminal investigative agency.

(b)      If any officer has voluntarily elected to provide a statement to criminal investigators, the assigned administrative investigator should review that statement before proceeding with any further interview of that involved officer.

1.      If a further interview of the officer is deemed necessary to determine policy compliance, care should be taken to limit the inquiry to new areas with minimal, if any, duplication of questions addressed in the voluntary statement.

2.      The involved officer will be provided with a copy of his or her prior statement before proceeding with any subsequent interview(s).

(c)      In the event that an involved officer has elected to not provide criminal investigators with a voluntary statement, or if there are additional issues that were not covered in the criminal investigation, the assigned administrative investigator will conduct an administrative interview to determine all relevant information.

1.      Although this interview should not be unreasonably delayed, care should be taken to ensure that the officer's physical and psychological needs have been addressed before commencing the interview.

2.      If requested, the officer will have the opportunity to select an uninvolved representative to be present during the interview. However, in order to maintain the integrity of

COE 002132

EXHIBIT 13
Page 8 of 8

each individual officer's statement, involved officers will not consult or meet with a representative or attorney collectively or in groups prior to being interviewed.

      3.     Administrative interview(s) should be recorded by the investigator. (The officer may also record the interview.)

      4.     The officer will be informed of the following (Garrity admonishment – See Appendix B:

- The interview will be for administrative purposes only
- They are ordered to provide full and truthful answers to all questions
- The statements they give cannot be used criminally against the officer giving the statement

      5.     The Internal Affairs Unit will compile all relevant information and reports necessary for the Department to determine compliance with applicable policies.

      6.     The completed administrative investigation will be submitted to the Use of Force Review Board, which will restrict its findings to whether there was compliance with the Department Use of *Deadly Force Review policy 802*.

      7.     Any other indications of potential policy violations will be determined in accordance with standard disciplinary procedures.

### 810.5.1     CIVIL LIABILITY RESPONSE

A member of this department may be assigned to work exclusively under the direction of the City Attorney to assist in the preparation of materials deemed necessary in anticipation of potential civil litigation.

All materials generated in this capacity will be considered attorney work product and may not be used for any other purpose. The civil liability response is not intended to interfere with any other investigation, but will be given reasonable access to all other investigations.

## 810.6     FEDERAL CIVIL RIGHTS INVESTIGATIONS

The federal government may choose to conduct its own investigation to determine if an employee's actions violated a person's civil rights.

EPD will cooperate with federal investigators by providing them copies of any criminal investigative reports and related materials regarding the incident.

The extent to which an employee chooses to exercise his or her individual civil rights with respect to federal investigations is his or her decision. So long as he or she exercises them legally, his or her decision will not jeopardize employment or career opportunities inside the department.

## 810.7     POST-INVESTIGATION DEBRIEFING

Upon final determination by the District Attorney, an internal review of the incident will be conducted for compliance with department policy. This will include a review of the incident with the involved officer(s).

An opportunity will be provided for any involved officer who makes a request to participate in a critical incident debriefing.

Involved officers are encouraged to avail themselves of the Employee Assistance Program or other resources which might be useful to them.

COE 002133