EXHIBIT 21
Page 1 of 9

Justin Russell

UNITED STATES DISTRICT COURT
DISTRICT OF OREGON
EUGENE DIVISION


OFELIA HERNANDEZ SANTIAGO,       )

Personal Representative of       )

the Estate of Eliborio           )

Rodrigues Jr.,                   )

         Plaintiff,              )

     v.                          ) No. 6:21-cv-07175-MK

SAMUEL TYKOL, JOHN DOE           )

SUPERVISORS 1-3, CITY OF         )

EUGENE,  a municipal             )

subdivision of the State of      )

Oregon,                          )

         Defendants.             )


DEPOSITION OF JUSTIN RUSSELL

Tuesday, January 31st, 2023

1:05 P.M.


THE VIDEO-RECORDED DEPOSITION OF JUSTIN RUSSELL was taken at CC Reporting & Videoconferencing, 101 East Broadway, Suite 300, Eugene, Oregon, before Deborah M. Bonds, CSR, CCR, RPR, Certified Shorthand Reporter in and for the State of Oregon.

EXHIBIT 21
Page 2 of 9

Justin Russell

20

de-escalation tactics.  It's just kind of a handful of various things to basically prepare them for what they may encounter on the -- on the streets.

Q.     Have you ever worked with Officer Tykol in defensive tactics?

A.     Yes.

Q.     Is he an instructor as well?

A.     Yes.

Q.     Does he work with you in defensive tactics instruction?

A.     Yes.

Q.     Okay.  You looked at me like -- yeah.

A.     Well, I would hope he works with me.  I work with him.

Q.     That's a great line.  Thank you very much.

So you mentioned one thing that is of interest to me.  You teach de-escalation tactics.

A.     Yes.

Q.     I realize that my questions are very, very lawyer-like questions, but what is -- what is the overarching 20,000-foot view of what de-escalation tactics are?

A.     A big one that we tend to -- to kind of preach or to discuss with new recruits, that de-escalation in an essence is time, distance, and

EXHIBIT 21
Page 3 of 9

Justin Russell

21

cover.

Q.    Okay.  Tell me what that means.

A.    The ability to create time, that time is on your side, unless if there's an emergency reason to where you need to intervene or act.  Distance, open up space, so that way it doesn't create any kind of exigency; and then cover if you can use it.

Q.    So time is your friend.  How does an officer buy time in a situation?

MR. MILLER:  Object as vague, but go ahead.

BY MS. BURROWS:

Q.    I mean, how do you teach that sort of thing?

A.    Through various ways, whether you want to wait for covers before you contact somebody.  If you want to -- I'm trying to -- either separate yourself, which also kind of falls in the distance category.

Q.    Uh-huh.

A.    That if -- if there's no -- basically, just kind of coaching, if there's no rush, to like -- to render aid or to defend of others or self-defense of yourself, then that -- the ability to wait for others is -- is always the best kind of

EXHIBIT 21
Page 4 of 9

Justin Russell

22

option.

Q. Okay.

A. And especially those are who are suffering from what we deal with on a day-to-day basis, mental health issues or substance abuse, that sometimes time will create its own de-escalation, that people will tend to reserve themselves or kind of, like, settle their own calm.

Q. Okay. All right. And then distance, what -- again, I realize that this is an overarching global kind of instruction, but what -- what do you teach? What is the philosophy behind the distance component?

A. Distance, basically a big proponent of that is that, you know, you're keeping safe. So any time we're interacting with people, we're de-escalating, that our -- our presence could be very frightening or it could be, you know, aggressive towards others. So we may open up that distance or keep space from them when we're contacting people to -- and then -- and then hopefully, if need to, that distance can adjust as well --

Q. Okay.

A. -- depending on the type of situation, if

EXHIBIT 21
Page 5 of 9

Justin Russell

23

it -- however it evolves.

Q.    Do people seem to get more concerned with the police, the closer you physically get to them?

MR. MILLER:  Objection.  Calls for speculation.

Go ahead.

BY MS. BURROWS:

Q.    In your experience?

A.    Yes.

Q.    Okay.  And so this distance is both to keep the potential suspect calmed down and to protect yourself?

A.    Yes.

Q.    Okay.  And does it also then give you a chance to assess the mental state of the person you're dealing with?

A.    Yes.

Q.    And does it also give a chance to assess whether or not they have weapons?

A.    That you could -- that you could physically see, yes.

Q.    Okay.  All right.

Now, for the good -- many years that I have done this kind of law, I've heard from police officers who talk about using different levels of

EXHIBIT 21
Page 6 of 9

Justin Russell

25

need either, like, a cover or concealment, you can utilize that.

Q.    And exigency is another word that gets thrown around an awful lot in the law enforcement world.

A.    Uh-huh.

Q.    What -- when you use the term "exigency," as you just did in that sentence, are you thinking of any particular kinds of situations that you would consider to be exigent circumstances necessitating closing that distance?

A.    Creating your own exigency in my terms would be putting yourself in a position that -- in which you created a situation that you may had to have used force when, if you weren't in that situation, you wouldn't have to have used force.

Q.    Okay.  And in -- in evaluating an exigency, do -- are you -- do you teach folks -- your officers to consider the type of crime that's being investigated?

A.    No.

Q.    Okay.  So is someone who commits a more serious crime, who is suspected of a much more serious crime, is it more imperative then to act quicker with that person?

EXHIBIT 21
Page 7 of 9

Justin Russell

27

Q.    Okay.  And these are awkward questions because I'm not exactly sure how to ask them so bear with me a little bit.

In an officer evaluating a suspect or a situation and making the decision about whether or not to close the distance between him or herself and the suspect, does the officer calculate in the relative physical size and appearance of both himself and the suspect?

MR. MILLER:  Objection.  Vague. Speculation.

Go ahead.

A.    I -- I would hope so.

BY MS. BURROWS:

Q.    And is there -- are there situations when an officer probably should not engage a particular suspect based upon physicality of either person?

MR. MILLER:  Same objections.

A.    Again, I -- it would determine a situation.  Sometimes you don't have that opportunity to where --

BY MS. BURROWS:

Q.    Sure.  Sure.  That would be an exception, but if there is time for you to make those decisions and wait for backup, is -- are you teaching that the

EXHIBIT 21
Page 8 of 9

Justin Russell

28

conservative approach is just wait for backup before you --

A. Yes.

Q. Okay. All right.

And with -- and that would be what the department is encouraging in all officers?

A. Yes.

Q. All right. So that are -- all the specialty teams that you're on. What, in 2019 -- and this event took place -- I think in November of 2019 is when the shooting took place?

A. Yes.

Q. November 30th. What -- were you on patrol that night?

A. Yes.

Q. And where were you located, if you recall, when the call came out?

A. I was at Bi-Mart on River Road.

Q. And were you there by yourself?

A. No.

Q. Were you responding to a call?

A. No.

Q. Who -- what other officers were there with you, if any?

A. Officer Drumm.

EXHIBIT 21
Page 9 of 9

Justin Russell

91

STATE OF OREGON            )

                           )   ss.

County of Lane             )


        I, Deborah M. Bonds, CSR-RPR, a Certified

Shorthand Reporter for the State of Oregon and

Washington, certify that the witness was sworn and

the transcript is a true record of the testimony

given by the witness; that at said time and place I

reported all testimony and other oral proceedings in

the foregoing matter; that the foregoing transcript

consisting of 90 pages contains a full, true and

correct transcript of the proceedings reported by me

to the best of my ability on said date.

        If any of the parties or the witness requested

review of the transcript at the time of the

proceedings, correction pages have been inserted.

        IN WITNESS WHEREOF, I have set my hand and CSR

seal this 15th day of February 2023, in the City of

Eugene, County of Lane, State of Oregon.


*Deborah M. Bonds*

Deborah M. Bonds, CSR, CCR, RPR

Oregon CSR No. 01-0374, Expires September 30, 2023

Washington CCR No. 21014344, Expires May 5, 2023