EXHIBIT 22
Page 1 of 7

Matthew Saylo

UNITED STATES DISTRICT COURT
DISTRICT OF OREGON
EUGENE DIVISION

OFELIA HERNANDEZ SANTIAGO,      )

Personal Representative of    )

the Estate of Eliborio        )

Rodrigues Jr.,                )

      Plaintiff,            )

   v.                        ) No. 6:21-cv-07175-MK

SAMUEL TYKOL, JOHN DOE        )

SUPERVISORS 1-3, CITY OF      )

EUGENE,  a municipal          )

subdivision of the State of  )

Oregon,                       )

     Defendants.           )

DEPOSITION OF MATTHEW SAYLO

Tuesday, January 31st, 2023

9:07 A.M.

THE VIDEO-RECORDED DEPOSITION OF MATTHEW SAYLO was taken at CC Reporting & Videoconferencing, 101 East Broadway, Suite 300, Eugene, Oregon, before Deborah M. Bonds, CSR, CCR, RPR, Certified Shorthand Reporter in and for the State of Oregon.

EXHIBIT 22
Page 2 of 7

Matthew Saylo

64

start with the sentence (as read): Officer Saylo said that there was no communication being shared and --

And what? It's all blacked out.

A. Being shared.

Q. (As read): And something -- that the subject on the ground was a bigger man who appeared to be six-foot tall and around 190 pounds.

Did you give that estimate to the Lane County detective?

A. Yes.

Q. And (as read): Officer Saylo noted that this subject appeared to be taller and much heavier than Officer Tykol.

Did you share that information with the detective?

A. Yes.

Q. Yeah. It shows up on your interview as well. Do you remember sort of making an assessment with the detective that you felt that between the officer and the suspect, it was a mismatch of size?

A. Yes.

Q. Okay. Could you -- could you explain to me what that meant?

EXHIBIT 22
Page 3 of 7

Matthew Saylo

65

A.    Yes.   What -- we refer to those as officer/suspect factors.   And what it has to do with is, you know, age, shape -- by shape, I mean conditioning -- and then size of the offender versus the officer.

And it's something that we look at when we kind of do reports and when -- for me, that's what I look at a lot and kind of gage somebody by, so that's why I look at it.

Q.    So how is that important to police work?

A.    For me -- why it's important to me is I look at the amount of force that's acceptable and not acceptable.   If I'm going to go arrest somebody that's five feet tall and 38 pounds or something, I'm much larger than that, and so my use of force should be tailored a little bit more towards someone dealing with that size.

Conversely, if you're dealing with someone that's much larger than you, the use of force you use has to be greater to try to meet with what they're at and their levels.

And then -- you know, and then it plays into conditioning, are you running out of breath, are you getting tired?   And so those are kind of factors that we -- plays into when I do my use of

EXHIBIT 22
Page 4 of 7

Matthew Saylo

66

force reports and how I use force.

Q. Okay. Does it also factor in when you considered the force you're going to use yourself?

A. Yes.

Q. Okay. And if an officer feels that they are physically outmatched -- for example, the officer may be not as large or big or fit as the suspect -- would that be an appropriate time to call for backup?

A. Yes.

Q. And why is that?

A. Because that's where you can get help and that kind of mitigates the officer/subject factors that you know you have a person there.

Q. Okay. All right. Did you know anything about how this encounter started between Officer Tykol and Mr. Rodrigues?

A. No.

Q. Do you know what crimes Officer Tykol was investigating the suspect for?

A. No.

Q. Did you know the suspect at all? Mr. Rodrigues, did you know him before this event?

A. No.

Q. Reading on, on this last paragraph --

EXHIBIT 22
Page 5 of 7

Matthew Saylo

68

perfect condition, but he noted that at that time his uniform was very disheveled and he was missing his radio and flashlight.

Tell me about Officer Tykol's clean and perfect condition.

A.    So Officer Tykol, when I did my interview, I described him kind of as a pretty boy.  He's always very well dressed.  His uniform's always pressed.  It's always clean.  You know, his shirt buttons always match up with his zipper.  His belt buckle is always directly right in the middle.  His pants are always neat and clean and pressed -- not necessarily pressed, but no wrinkles.

He always looks very -- you know, his officer presence is kind of one of the things we describe when we talk about people's uniform, and it was very neat and it was always very neat.

Q.    Poster boy for --

A.    Yes.

Q.    -- a cop?

Okay.  Do you know if Mr. -- if Officer Tykol is in good physical shape?

A.    He is.

Q.    And how -- what do you base that assessment on?

EXHIBIT 22
Page 6 of 7

Matthew Saylo

69

A. We worked out before shift, and he was always working out. When we'd come in, he was working out. He was -- he's a runner. He's a mountain biker. He does a lot of active stuff, so he's in good shape.

Q. Does he lift weights?

A. I don't know if I've ever seen him -- well, yes, he lifts weights, but not heavy weights.

Q. Okay.

A. He lifts weights though.

Q. All right. And so his -- his appearance that night was a contrast to what you're used to seeing?

A. Yes.

Q. All right. Let's -- so you said his uniform was very disheveled. Could you maybe be a little more specific on what that looked like to you?

A. Yeah. I mean, his -- his normal, you know, like the shirt lines, because he was wearing a jacket, so his pants were kind of crooked. It looked like his jacket was kind of pulled up. He was trying to -- while he was bent over, you could see that, you know, the jacket was riding up, his shirt was kind of untucked, just not his normal

EXHIBIT 22
Page 7 of 7

Matthew Saylo

77

STATE OF OREGON          )

                        )    ss.

County of Lane           )


     I, Deborah M. Bonds, CSR-RPR, a Certified

Shorthand Reporter for the State of Oregon and

Washington, certify that the witness was sworn and

the transcript is a true record of the testimony

given by the witness; that at said time and place I

reported all testimony and other oral proceedings in

the foregoing matter; that the foregoing transcript

consisting of 76 pages contains a full, true and

correct transcript of the proceedings reported by me

to the best of my ability on said date.

     If any of the parties or the witness requested

review of the transcript at the time of the

proceedings, correction pages have been inserted.

     IN WITNESS WHEREOF, I have set my hand and CSR

seal this 15th day of February 2023, in the City of

Eugene, County of Lane, State of Oregon.


Deborah M. Bonds, CSR, CCR, RPR

Oregon CSR No. 01-0374, Expires September 30, 2023

Washington CCR No. 21014344, Expires May 5, 2023