Ben Miller, OSB #074690
BMiller@eugene-or.gov
Eugene City Attorney's Office
101 W. 10th Avenue, Suite 203
Eugene, OR 97401
Telephone:  (541) 682-8447
Facsimile:   (541) 682-5414

Of Attorneys for Defendants
Samuel Tykol and City of Eugene

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| **OFELIA HERNANDEZ SANTIAGO,**<br>Personal Representative of the Estate of<br>Eliborio Rodrigues Jr., | Case No: 6:21-cv-01715-MK |
| Plaintiff, | |
| v. | **DEFENDANTS SAMUEL TYKOL AND CITY OF EUGENE'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |
| **SAMUEL TYKOL, JOHN DOE SUPERVISORS 1-3, CITY OF EUGENE,**<br>a municipal subdivision of the State of Oregon, | **Fed. R. Civ. P. 56** |
| Defendants. | |

**INTRODUCTION**

Defendants City of Eugene and Samuel Tykol ("defendants") moved for summary judgment against the Estate's Fourth Amendment unlawful arrest claim because there was probable cause to stop and later arrest Mr. Rodrigues, because there was arguable probable cause, and because Officer Tykol is entitled to qualified immunity. MSJ at 7-15 [Doc. 25]. Defendants moved for summary judgment against the Estate's excessive use of deadly force claim because Officer Tykol did not engage in excessive use of deadly force and is entitled to qualified immunity. MSJ at 15-17 [Doc. 25]. Finally, defendants requested the Court either decline supplemental jurisdiction or, if not, grant summary judgment on the state law claims because: 1) Officer Tykol's conduct was justified under ORS 161.239, 2) intentional actions cannot support a negligence claim under Oregon law, and 3) the City did not fail to train or

PAGE 1 – DEFENDANTS SAMUEL TYKOL AND CITY OF EUGENE'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

supervise its employees in any of the ways alleged. MSJ at 17-20 [Doc. 25].

The Estate's response is notable for what it does not dispute. The Estate offers its own editorial observations about the event but does not dispute Officer Tykol's version directly or circumstantially. The Estate does not point to new or additional facts, or new or additional witnesses, to rebut Officer Tykol's account of what occurred. The Estate does not dispute that Officer Tykol had probable cause to initially stop Mr. Rodrigues for a pedestrian violation. The Estate does not dispute the authenticity or accuracy of Officer Tykol's body worn camera or the surveillance video. And the Estate does not dispute the timeline provided by the radio traffic and other officers' in-car videos.

Regarding the specific claims, the Estate transitions to an analysis of state law and state constitutional provisions to defend its unlawful arrest claim. MSJ Response at 18-19 [Doc. 46]. These were not the claims brought by the Estate nor can they be brought in a § 1983 claim. Regarding the use of deadly force claim, the Estate focuses away from what was occurring at the time of the use of deadly force, but rather on other examples of non-deadly force leading up to the use of deadly force. MSJ Response at 25-26 [Doc. 46]. Again, these were not the claims the Estate asserted in their Complaint, nor do they have any bearing on the justification for the use of deadly force at the time it occurred. Finally, the Estate offered no position on retaining supplemental jurisdiction or any explicit defense of its state law claims.

For the foregoing reasons, the Court should grant defendants Officer Tykol and the City of Eugene's Motion for Summary Judgment. The Court should enter judgment in favor of these defendants on all claims, award them their reasonable costs, and grant such further and additional relief as is just and proper.

## DISCUSSION

**1.    First Claim for Relief: 42 U.S.C. § 1983 against Officer Tykol for False Arrest**

The Estate's First Claim for Relief was brought under 42 U.S.C. § 1983 for a violation of the Fourth Amendment by making an arrest unsupported by probable cause. Complaint, ¶¶ 41-48 [Doc. 1]. Officer Tykol moved for summary judgment on three separate bases: 1) the

insufficiency of the evidence, 2) qualified immunity, and 3) arguable probable cause. MSJ at 7-15 [Doc. 25]. The Estate addressed only two of the three arguments in its response. MSJ Response at 16-20, 24-33 [Doc. 46].

### A.    Insufficiency of Evidence

Officer Tykol initially moved for summary judgment on this claim by explaining how he had probable cause to stop Mr. Rodrigues for the pedestrian violation he observed and how later in the encounter Mr. Rodrigues committed the offense of interfering with a peace officer by failing to follow lawful orders to sit down. Officer Tykol also explained how Mr. Rodrigues later committed more serious offenses of resisting arrest, assault, and disorderly conduct. MSJ at 8-9 [Doc. 25].

### i.    Pedestrian Stop

At the outset, the Estate concedes that the initial stop of Mr. Rodrigues for the pedestrian violation Officer Tykol observed was lawful. MSJ Response at 24 [Doc. 46] (" The original stop for the pedestrian violation does not immediately violate any Constitutional restrictions[.]"). From there, *any* arrest was lawful for purposes of the Fourth Amendment, even if the state or City did not make a pedestrian violation an arrestable offense. *Atwater v. City of Lago Vista*, 532 U.S. 318, 354, 121 S. Ct. 1536, 149 L. Ed. 2d 549 (2001) (it is not a violation of the Fourth Amendment for an officer to arrest a person who is in clear violation of law, even if the offense is minor and nonviolent.); *Virginia v. Moore*, 553 U.S. 164, 176, 128 S. Ct. 1598 (2008) (even in the face of state law prohibiting arrest for the crime at issue, custodial arrest for an offense does not violate the Fourth Amendment where supported by probable cause.); *Miller v. City of Portland*, 2014 WL 320555, *9-10 (D. Or. Jan. 29, 2014) (that Oregon prohibits arrest for the jaywalking offense cannot transform the arrest into a constitutional violation if it was based on probable cause.).

### ii.    Interfering with a Peace Officer

Next, the Estate argues that Officer Tykol's orders regarding identification were not "lawful orders" for purposes of interfering with a peace officer. MSJ Response at 24-25 [Doc.

46]. The Estate makes an incorrect assumption. Officer Tykol has never asserted that was the basis for the arrest. Rather, Officer Tykol has always asserted the lawful orders were the orders to "sit down." Tykol Depo. at 69:1-15, 202:20-203:10 [Doc. 27-1]. He gave that order six times and Mr. Rodrigues refused to follow it. Tykol Depo. at 67:3-18 [Doc. 27-1]; Tykol BWC at 1:27 -1:48 [Doc. 39]; Tykol Decl. ¶ 5 [Doc. 31]. It was never any order having to do with identification.

Moreover, the subjective belief of the officer for what crime they are arresting for does not matter. *Devenpeck v. Alford*, 543 U.S. 146, 153, 125 S. Ct. 588, 160 L. Ed. 2d 537 (2004) (rejecting rule that would have limited probable cause inquiry to the specific offense invoked by the arresting officer). If the facts known to an arresting officer are sufficient to create probable cause, the arrest is lawful, regardless of the officer's subjective reasons for it. *Id*. ("[a police officer's] subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause"). Under *Devenpeck*, the subjective reason that Officer Tykol arrested Mr. Rodrigues is irrelevant so long as the available facts suggested that Mr. Rodrigues was committing a crime. *Tatum v. City and County of San Francisco*, 441 F.3d 1090, 1094 (9th Cir. 2006).

Here, the objective and undisputed facts establish that Mr. Rodrigues recognized Officer Tykol as a police officer, that he heard Officer Tykol's orders to sit down, did not comply, and instead physically resisted Officer Tykol's efforts to get him to sit down. Tykol Depo. at 67:3-18 [Doc. 27-1]; Tykol BWC at 1:20-1:48 [Doc. 39]. That constitutes the crime of interfering with a peace officer under ORS 162.247(1)(b) as it existed in 2019.

The Estate next argues that probable cause determinations are always a jury question. MSJ Response at 19-20 [Doc. 46]. That is clearly not the case. *District of Columbia v. Wesby*, 138 S. Ct. 577, 585-588 (2018) ("Viewing these circumstances as a whole, a reasonable officer could conclude that there was probable cause to believe the partygoers knew they did not have permission to be in the house."). Rather, the threshold "determination of whether the facts alleged could support a reasonable belief in the existence of probable cause . . . is [] a question of

law to be determined by the court." *Act Up!/Portland v. Bagley*, 988 F.2d 868, 873 (9th Cir. 1993). *See also Peng v. Mei Chin Penghu*, 335 F.3d 970, 979–80 (9th Cir. 2003).

### iii.    Other State Law Arguments

Finally, the Estate argues about the application of the Oregon Constitution and about a subjective test. MSJ Response at 18-19 [Doc. 46]. There are several problems with these arguments. First, the Estate did not bring its First Claim for Relief under the Oregon Constitution. The Estate only brought a claim under 42 U.S.C. § 1983. *See* Complaint, ¶ 1 ("This action is filed by Plaintiff under 42 U.S.C. § 1983 and ORS 30.265, for events occurring on or about November 30, 2019, alleging unreasonable use of deadly force, in violation of the Fourth Amendment to the United States Constitution, along with state torts of negligence and wrongful death, arising from the wrongful, unreasonable and unnecessary shooting of Eliborio Rodrigues Jr, causing his death.") and ¶ 42 ("[Mr. Rodrigues] had the Fourth Amendment protection to be free from the unlawful seizure of his person pursuant to the parameters of the 4th Amendment to the United States Constitution.") [Doc. 1]. Nowhere in the Complaint is there any reference to the Oregon Constitution.

The Estate should not be allowed to raise new theories for the first time in its summary judgment response. *Wasco Prods., Inc. v. Southwall Techs., Inc.,* 435 F.3d 989, 992 (9th Cir. 2006) (*quoting Fleming v. Lind-Waldock & Co.*, 992 F.3d 20, 24 (1st Cir. 1990)) ("[S]ummary judgment is not a procedural second chance to flesh out inadequate pleadings."); *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294 (9th Cir. 2000) (trial court did not err in dismissing claim raised for the first time at summary judgment where plaintiffs had evidence to support new claim prior to filing of summary judgment motion).

Second, for purposes of 42 U.S.C. § 1983, courts have required plaintiffs to prove that 1) the defendants acted under color of state law and, 2) deprived plaintiffs of rights secured by the Constitution or federal statutes. *Gibson v. United States*, 781 F.2d 1334, 1338 (9th Cir. 1986). Section 1983 does not provide a cause of action for violation of state Constitutional provisions. *Galen v. Cnty. of Los Angeles*, 477 F.3d 652, 662 (9th Cir. 2007) ("Section 1983 requires Galen

to demonstrate a violation of federal law, not state law."); *Ove v. Gwinn*, 264 F.3d 817, 824 (9th Cir. 2001); *Sweaney v. Ada Cnty., Idaho*, 119 F.3d 1385, 1391 (9th Cir. 1997); *Lovell v. Poway Unified Sch. Dist.,* 90 F.3d 367, 370 (9th Cir. 1996); *Ybarra v. Bastian*, 647 F.2d 891, 892 (9th Cir. 1981) ("Only federal rights, privileges, or immunities are protected by the section [1983]"). Thus, the Estate did not and cannot pursue a claim under the Oregon Constitution in the First Claim for Relief.

While the elements of what constitutes an offense are defined by state law, state law does not define the protections of the Fourth Amendment. *Martinez-Medina v. Holder*, 673 F.3d 1029, 1036-37 (9th Cir. 2010). Rather, a state's decision "to protect privacy beyond the level that the Fourth Amendment requires" is "irrelevant" to the parameters of the Fourth Amendment's protections. *Moore,* 553 U.S. at 171-72 (*citing California v. Greenwood*, 486 U.S. 35 (1988); *Cooper v. California*, 386 U.S. 58 (1967)). "'[W]hether or not a search is reasonable within the meaning of the Fourth Amendment,'" the Court explained, "has never 'depend[ed] on the law of the particular State in which the search occurs.'" *Id*. at 172 (quoting *Greenwood*, 486 U.S. at 43 (alterations in original)). As Magistrate Judge Clarke recently noted in response to a similar argument from counsel, "Despite this clear limitation to federal statute or the federal constitution, Plaintiff argues that the Court should utilize section 1983 to enforce rights under the Oregon constitution and should use Oregon's subjective standard for evaluating probable cause. No law or precedent is cited for this unique argument, and the Court declines to entertain it here." *Malaer v. Kirkpatrick*, 2023 WL 7410918, *4, fn. 1 (D. Or. Nov. 9, 2023).

## B.    Qualified Immunity

Officer Tykol next argued that plaintiff would be unable to come up with a body of clearly established law demonstrating that his application of the crime of interference with a peace officer to the facts of this case was clearly unlawful. MSJ at 9-12 [Doc. 25]. Officer Tykol explained the elements of that crime under state law, including a detailed explanation of the interplay between *State v. McNally*, 361 Or. 314, 392 P.3d 721 (2017) and *State v. Moravek*, 297 Or. App. 763, 772-773, 444 P.3d 521 (2019). MSJ at 11 [Doc. 25].

PAGE 6 – DEFENDANTS SAMUEL TYKOL AND CITY OF EUGENE'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

The Estate did not identify any case which would have clearly established that Officer Tykol's actions in arresting Mr. Rodrigues were clearly prohibited. *Compare Johnson v. Barr*, 73 F.4th 644, 652-654 (9th Cir. 2023). Rather, the Estate asserts that the doctrine of qualified immunity should be abolished. MSJ Response at 30-33 [Doc. 46]. The Supreme Court continues to apply qualified immunity to claims brought under section 1983. *City of Tahlequah v. Bond*, 595 U.S. __, 142 S. Ct. 9, 11-12 (2021); *Rivas-Villegas v. Cortesluna*, 595 U.S. __, 142 S. Ct. 4, 7-9 (2021); *Escondido v. Emmons*, 586 U.S. __, 139 S. Ct. 500, 503 (2019); *Kisela v. Hughes*, 584 U.S. __, 138 S. Ct. 1148, 1152, 200 L. Ed. 2d 449 (2018); *District of Columbia v. Wesby*, 583 U.S. 48, 138 S. Ct. 577, 593, 199 L.Ed.2d 453 (2018); *White v. Pauly*, 580 U.S. 73, 137 S. Ct. 548, 551, 196 L. Ed. 2d 463 (2017). The Estate provides no basis for this Court to disregard Supreme Court precedent.

As a result, Officer Tykol would also be entitled to qualified immunity.

### C.    Arguable Probable Cause

Finally, Officer Tykol argued that he was entitled to summary judgment because he met the standard for arguable probable cause. MSJ at 13-15 [Doc. 25]. The Estate did not respond to this argument in any way. The Estate has, therefore, abandoned this claim by not addressing it in response to the Defendants' Motion for Summary Judgment. *Jenkins v. County of Riverside*, 398 F.3d 1093, 1095 fn. 4 (9th Cir. 2005); *USA Petroleum Co. v. Atlantic Richfield Co.*, 13 F.3d 1276, 1284 (9th Cir. 1994).

### 2.    Second Claim for Relief: Excessive Force Against Officer Tykol

The Estate's Second Claim for Relief is for unreasonable use of deadly force. Complaint, ¶¶ 49-54 [Doc. 1]. The Estate alleged that Officer Tykol used excessive force against Mr. Rodrigues by shooting him. *Id*. at ¶ 52. Officer Tykol argued he was entitled to qualified immunity under both prongs. Specifically, Officer Tykol first argued there was no Fourth Amendment violation because at the time of the shooting, Mr. Rodrigues was on top of him and physically assaulting him. A reasonable officer in the position of Officer Tykol would have concluded deadly force was authorized in response to the threat posed by Mr. Rodrigues. MSJ at

15-16 [Doc. 25]. Second, Officer Tykol argued that he was entitled to qualified immunity because no law made it clear that deadly force was unauthorized under those circumstances. MSJ at 16-17 [Doc. 25].

In response, the Estate begins by shifting the excessive force theory that was pled in the Complaint. The Estate initially focuses on non-deadly uses of force preceding the use of deadly force. MSJ Response at 25-27 [Doc. 46]. But the Estate's Second Claim is captioned "Unlawful Use of Deadly Force" and claims "The acts and omissions of Defendant Tykol in shooting Mr. Rodrigues without a reasonable belief that Mr. Rodrigues presented an imminent and serious danger to the officer or others is a violation of the 4th Amendment restriction on deadly force." Complaint, ¶ 51 [Doc. 1]. The Estate claims that "As a result of these Constitutional violations, Mr. Rodrigues died." Complaint, ¶ 54 [Doc. 1]. While the Estate described other instances of force in the Complaint, those were as context leading up to the use of deadly force. It never made clear that it was pursuing an independent Fourth Amendment claim for the prior application of non-deadly force. Had the Estate done so - or said this was part of their claim during the LR 7-1 conferral - Officer Tykol would have moved against that claim and focused on those uses of force, Ninth Circuit law governing focused blows, takedowns, OC Spray, and Tasers and the application of qualified immunity.

Because it was not raised before, this Court should not consider it or should provide defendants with an opportunity to address the claim. *Wasco Prods., Inc.* 435 F.3d at 992; *Coleman*, 232 F.3d at 294 (trial court did not err in dismissing claim raised for the first time at summary judgment where plaintiffs had evidence to support new claim prior to filing of summary judgment motion).

### A.    No Fourth Amendment Violation

Turning to the claim that was made, Officer Tykol argued his use of deadly force comported with the Fourth Amendment because Mr. Rodrigues was on top of him and he was being physically assaulted. MSJ at 15-16 [Doc. 25]. The Estate maintains that all the factfinder has is Officer Tykol's statements on what happened in the flight and the consequential shooting.

MSJ Response at 26 [Doc. 46]. This is not entirely true as the parties could also rely on the evidence and photographs collected at the scene, statements of audial witnesses, recorded radio traffic, the Taser data download, Officer Tykol's excited utterances on Officer Jenztsch's Body Worn Camera [Doc. 37 at 1:40-1:51], the physical injuries to Officer Tykol, the pathologist's report, and a FARO Scan of the scene. *See* Tykol Depo. Ex. 18 [Doc. 27-1, pgs. 96-99].

The Estate principally argues that the defendants should have done more to affirmatively provide forensic evidence in support of Officer Tykol's testimony. MSJ Response at 14-15 [Doc. 46]. This is an incorrect application of the burden of proof. The law does not require officers to "divine such a biomechanical explanation as an incident unfolds in a matter of seconds." *Gonzales v. Cty. of Antioch*, 2015 WL 6152781, *12 (N.D. Cal. Oct. 20, 2015) (*citing George*, 736 F.3d at 838).

Rather, at summary judgment the defendant has both the initial burden of production and the ultimate burden of persuasion on the motion. In order to carry its burden of production, the defendant must either produce evidence negating an essential element of the plaintiff's claim or show that the plaintiff does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. In order to carry its ultimate burden of persuasion on the motion, the defendant must persuade the court that there is no genuine issue of material fact. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.,* 210 F.3d 1099, 1102 (9th Cir. 2000) (citations omitted). Officer Tykol met both burdens through the evidence he submitted in support of his motion for summary judgment. [Docs. 26-39].

If the moving party satisfies its initial burden, "the non-moving party must set forth, by affidavit or as otherwise provided in [Federal] Rule [of Civil Procedure] 56, specific facts showing that there is a genuine issue for trial." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir. 1987) (internal quotation marks and citation omitted). "[The] non-moving plaintiff cannot rest upon the mere allegations or denials of the adverse party's pleading but must instead produce evidence that sets forth specific facts showing that there is a genuine issue for trial." *Estate of Tucker ex rel. Tucker v. Interscope Records, Inc.*, 515 F.3d

1019, 1030 (9th Cir. 2008) (internal quotation marks and citation omitted).

This is what the Estate did not do. The Estate instead primarily argues that because there is not video of the shooting itself, there are inherently questions of fact about what occurred that should go to a jury. MSJ Response at 26 [Doc. 46]. That is not the standard. Rather, "In cases where the best (and usually only) witness who could offer direct testimony for the plaintiff about what happened before a shooting has died, [Ninth Circuit] precedent permits the decedent's version of events to be constructed circumstantially from competent expert and physical evidence, as well as from inconsistencies in the testimony of law enforcement." *George v. Morris*, 736 F.3d 829, 834 (9th Cir. 2013). However, more than mere speculation is necessary to defeat a motion for summary judgment when it is supported by admissible evidence and direct testimony.

i.       **Expert Evidence**

Turning to the first category recognized by the Ninth Circuit, the Estate could have offered an expert witness' report to call into question whether Mr. Rodrigues ever struck Officer Tykol or ever held the Taser. *George*, 736 F.3d at 833. They did not. Under Fed. R. Civ. P. 34(a)(1)(B) the Estate could have asked to examine the firearm, the Taser, Officer Tykol's uniform, or other evidence and test them for fingerprints, blood splatter, or gunpowder residue. They did not. Rather, the Estate seems to offer a recommendation memo from the former Police Auditor to argue that Officer Tykol violated internal City policies leading up to his need to use deadly force. MSJ Response at 24-26 [Doc. 46]; Burrows Decl. Ex. 5 [Doc. 48-6]. This is a misplaced argument for three reasons.

First, to the extent the Estate is relying upon statements by the former Eugene Police Auditor to establish whether there was probable cause or the necessity of force, he cannot provide any legal opinion for this case. *Hangarter v. Provident Life & Accident Ins. Co.,* 373 F.3d 998, 1016 (9th Cir. 2004) ("[A]n expert witness cannot give an opinion as to her legal conclusion, i.e., an opinion on an ultimate issue of law." (internal citations omitted)); *Nationwide Transport Fin. v. Cass Info. Sys., Inc.,* 523 F.3d 1051, 1058-60 (9th Cir. 2008) ( a statement as to

PAGE 10 – DEFENDANTS SAMUEL TYKOL AND CITY OF EUGENE'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

whether an individual violated a specific statutory provision is an opinion on a legal conclusion which an expert witness is not permitted to give); *Smith v. City of Huntsville*, 2016 WL 5746216, *4 n.9 (N.D. Ala. Sept. 30, 2016) (explaining that a plaintiff cannot rely on an expert opinion to introduce facts or attempt to introduce facts based on the expert's own assumptions in a motion for summary judgment).

Second, this is a misplaced argument because § 1983 does not provide a cause of action for violation of internal policies. The failure to comply with an internal policy or state law does not amount to a constitutional violation on its own. *Davis v. Scherer*, 468 U.S. 183, 194 (1984); *Campbell v. Burt*, 141 F.3d 927, 930 (9th Cir. 1998). Rather, the Estate would need to show that failure to comply with an internal policy was *also* a violation of the Constitution. For example, the Estate would need to show that a dispute about compliance with the City's internal de-escalation policy or foot pursuit policy mattered for purposes of the Fourth Amendment. The Estate cannot do so. A police officer is not under any duty to retreat from any situation before resorting to the use of deadly force, if such force is otherwise proper. *Reed v. Hoy*, 909 F.2d 324, 330 (9th Cir. 1989). In that regard, any dispute about whether Officer Tykol did or did not comply with an internal City policy is not a *material* issue of fact. *Scott v. Harris*, 550 U.S. 372, 385 (2007) (Arguments based on what the officers could have done do not create a genuine dispute of material fact.) In addition, "Expert testimony which does not relate to any issue in the case is not relevant" and is subject to exclusion. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 591 (1993).

Finally, this is a misplaced argument because the United States Supreme Court has specifically rejected the "provocation rule" theory this argument is based upon. *Cty. of Los Angeles, Calif. v. Mendez,* 137 S. Ct. 1539, 1547, 198 L. Ed. 2d 52 (2017) ("An excessive force claim is a claim that a law enforcement officer carried out an unreasonable seizure through a use of force that was not justified under the relevant circumstances. It is not a claim that an officer used reasonable force after committing a distinct Fourth Amendment violation such as an unreasonable entry.") A lawful action by police is not rendered unreasonable because it provokes

a violent reaction. *Cty. and Cnty. of San Francisco v. Sheehan,* 575 U.S. 600, 615 (2015). Rather, so long as "a reasonable officer could have believed that his conduct was justified," a plaintiff cannot "avoi[d] summary judgment by simply producing an expert's report that an officer's conduct leading up to a deadly confrontation was imprudent, inappropriate, or even reckless." *Billington v. Smith*, 292 F.3d 1177, 1189 (9th Cir. 2002); *see also Sheehan,* 575 U.S. at 616-17 ("Sheehan cannot establish a Fourth Amendment violation based merely on bad tactics that result in a deadly confrontation that could have been avoided.") (internal citations and quotations omitted).

### ii.    Forensic Re-Creation

The Estate also could have offered a forensic re-creation to show the angle or path of the bullet wound was inconsistent with Officer Tykol's description of Mr. Rodrigues' position and placement. *Estate of Lopez by & through Lopez v. Gelhaus*, 871 F.3d 998, 1003 (9th Cir. 2017). They did not. Rather, at most the Estate speculates about what the pathologist meant when he described one wound as near-contact and the other two at an intermediate range. MSJ Response at 15 [Doc. 46]. But the Estate did not depose Dr. Davis, the forensic pathologist who conducted the autopsy, to determine what he meant. The Estate did not offer a report from another expert about the use of those terms. The Estate did not offer its own forensic re-creation of the scene.

What Dr. Davis meant by those terms is already answered by the evidence Officer Tykol submitted. The District Attorney asked "the forensic pathologist if the injuries he noted and the bullet trajectories were consistent with the description of the incident by Officer Tykol (firing three times with his right hand into the abdomen of Mr. Rodrigues as Mr. Rodrigues was on top of Officer Tykol). Dr. Davis told me the injuries were consistent with the report of the incident." Tykol Depo. Ex. 18 [Doc. 27-1 at pg. 99].

### iii.    Statements and Testimony

Finally, a plaintiff can point to inconsistencies in the law enforcement's testimony. *Estate of Lopez by & through Lopez v. Gelhaus*, 871 F.3d 998, 1007 (9th Cir. 2017). The Estate only identifies what it calls three inconsistencies.

First, the Estate claims that Officer Tykol initially described Mr. Rodrigues as jamming the Taser into the officer's crotch but in depositions testified instead that Mr. Rodrigues moved the Taser barrel from his own person, scraping it along Officer Tykol to move it away completely. MSJ Response at 26-27 [Doc. 46]. Officer Tykol was describing two different contacts. IDFIT Interview at 28:9-12, and 28:21, Tykol Depo. at 171:2-18, 253:3-12, 254:14-24, 256:15-24, 257:9-18 [Doc. 27-1]. There is no inconsistency.

Second, the Estate claims there is an inconsistency in Officer Tykol's testimony that Mr. Rodrigues had no flashlight when he was later observed with one on the Body-Worn Camera footage. There is no inconsistency. Officer Tykol said in his initial statement that he did not observe Mr. Rodrigues utilizing a flashlight when he first saw him. Tykol Depo. at 282:21-283:7; IDFIT Interview at 22:7-12 [Doc. 27-1]. The surveillance video bears this out. Mr. Rodrigues is seen walking down Acacia Street but not utilizing a flashlight. 1575 Acacia Surveillance Footage at 1:42-2:12. [Doc. 35].

Finally, the Estate argues that Officer Tykol's description of Mr. Rodrigues as "fighting" during the handcuffing is inaccurate. MSJ Response at 27 [Doc. 46]. This refers to Officer Tykol's radio transmission of "fighting with one." Tykol BWC at 2:41-2:43 [Doc. 39]; Radio Traffic at 2:27-2:32 [Doc. 38]. This was after Officer Tykol struggled with Mr. Rodrigues for almost a minute and used OC spray to no effect. Tykol BWC at 1:43-2:41 [Doc. 39]. There is nothing inaccurate about Officer Tykol's short-hand description over the radio.

Officer Tykol's account remained consistent between his interview on December 3, 2019, and his deposition on January 30, 2023. [Doc. 27-1]. Despite having the interview Officer Tykol provided days after this event, and despite deposing Officer Tykol for nearly six hours, the Estate points to no other inconsistencies in his testimony. Instead, the Estate simply states that they dispute Officer Tykol's account of what occurred. But assertions of attorneys are not evidence. It is not enough for an attorney to state, "I don't believe Officer Tykol." There must be direct or circumstantial evidence to create a dispute of fact. None of that exists in this record.

The Estate was asked for its evidence at deposition and provided none. Santiago Depo. at 7:19-8:6, 60:4-62:19, 67:23-68:9 [Doc. 26-1]. Because the Estate has not provided any admissible evidence to call into question Officer Tykol's account of what occurred, he is entitled to summary judgment on the use of deadly force claim.

### B.    Qualified Immunity

Officer Tykol also moved for summary judgment on the basis of qualified immunity. He argued that no case would have made it clear that his use of deadly force under the circumstances he was confronted with was unlawful. MSJ at 16-17 [Doc. 25]. An officer is "not required to wait and be seriously injured or killed before exercising his judgment and bringing the situation under control." *Monroe v. Cty. of Phoenix*, 248 F.3d 851, 862 (9th Cir. 2001) (*overruled on other grounds in Acosta v. Hill*, 504 F.3d 1323 (9th Cir. 2007)).

The Estate did not respond factually to this argument, other than its proposal to disavow the doctrine of qualified immunity. MSJ Response 27-33 [Doc. 46]. The Estate identified no similar case to the facts of this one, where an officer was held to have violated the Constitution. Rather the Estate summarily claims there are factual disputes precluding any review of qualified immunity. MSJ Response at 33 [Doc. 46]. But the Estate does not identify what those disputes are for the use of deadly force claim.

In the Ninth Circuit "the relevant question for purposes of qualified immunity" is not whether Mr. Rodrigues actually threatened the officers, but whether they "could reasonably have believed that [he] posed such a threat." *A.K.H. ex rel. Landeros v. City of Tustin*, 837 F.3d 1005, 1011 (9th Cir. 2016). Here it was reasonable for Officer Tykol to perceive that threat when he was being assaulted, Mr. Rodrigues was on top of him, Officer Tykol was struggling to control his Taser, and he was in imminent danger of being disarmed of his firearm and shot. As a result, Officer Tykol is entitled to qualified immunity for his split-second decision during the struggle. *Sabbe v. Wash Cnty. Bd. of Comm'rs,* 84 F.4th 807, 828-829 (9th Cir. 2023) (Upholding qualified immunity for split-second decision to shoot and kill a threatening individual.)

3.      **Third Claim for Relief: Supervisory Liability Against John and Jane Does**

The Estate's third claim for relief is for supervisory liability against unnamed supervisors at the Eugene Police Department. Complaint, ¶¶ 55-63 [Doc. 1]. During conferral, the Estate agreed to dismiss this claim.

4.      **Fourth Claim for Relief: Excessive Force Against the City of Eugene**

The Estate's fourth claim for relief alleges the City failed to properly supervise or train its employees. Complaint, ¶¶ 64-66 [Doc. 1]. The Estate agreed to dismiss this claim during conferral.

5.      **Fifth and Sixth Claims for Relief – State Law Claims**

The Estate's fifth and sixth claims for relief are state law claims for wrongful death and negligence, respectively. Complaint, ¶¶ 67-76 [Doc. 1]. The defendants argued that if the district court dismissed all claims over which it has original jurisdiction, it should decline to exercise supplemental jurisdiction over the Estate's state law claims. MSJ at 17 [Doc. 25]. The Estate did not respond to this argument.

A.      **Fifth Claim for Relief – Wrongful Death**

Next, defendants moved for summary judgment on the Estate's fifth claim for relief for state law wrongful death. Defendants argued that Officer Tykol's actions were in furtherance of his official duties, and that ORS 161.239 (2019 version) justified Officer Tykol's use of deadly force. MSJ at 17-18 [Doc. 25]. The Estate did not respond to either argument.

A party waives an argument at the summary judgment stage if it provides no argument in support of its position or does not adequately develop the argument. *Versluys v. Weizenbaum*, No. 3:21-cv-01694-MO, 2023 WL 6880412, *2, (D. Or. Oct. 18, 2023) *citing DZ Bank AG Deutsche Zentral-Genossenschaftsbank v. Connect Ins. Agency, Inc.,* No. C14-5880JLR, 2016 WL 631574, at *25 (W.D. Wash. Feb. 16, 2016) (collecting cases); *see also Kroeger v. Vertex Aerospace LLC*, No. CV 20-3030-JFW(AGRX), 2020 WL 3546086, at *8 (C.D. Cal. June 30, 2020) (collecting cases and noting that failure to respond in an opposition brief to an argument put forward in an opening brief constitutes waiver). Because the Estate has waived any argument

in response to defendants' motion for summary judgment against the Fifth Claim for Relief, the motion should be granted.

**B.**     **Sixth Claim for Relief - Negligence Against the City**

The Estate's sixth and final claim is for negligence. Complaint ¶¶ 71-76 [Doc. 1]. Defendants moved for summary judgment against both of the Estate's negligence claims because intentional conduct cannot support a negligence claim under Oregon law and because the City was not negligent in its training or supervision of employees. MSJ at 17-20 [Doc. 25]. The Estate did not respond to either argument. Because the Estate has waived any argument in response to defendants' motion for summary judgment against the Sixth Claim for Relief, the motion should be granted.

## CONCLUSION

For the foregoing reasons, the Court should grant defendants Officer Tykol and the City of Eugene's Motion for Summary Judgment. The Court should enter judgment in favor of these defendants on all claims, award them their reasonable costs, and grant such further and additional relief as is just and proper.

DATED this 20th day of November, 2023.

**CITY OF EUGENE**

By:     s/ Ben Miller
        Ben Miller, OSB #074690
        BMiller@eugene-or.gov
        Telephone: (541) 682-8447
        Facsimile:  (541) 682-5414

        Of Attorneys for Defendants
        Samuel Tykol and City of Eugene

# CERTIFICATE OF SERVICE

I certify that on this 20th day of November, 2023, I served or caused to be served a true and complete copy of the foregoing **DEFENDANTS SAMUEL TYKOL AND CITY OF EUGENE'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** on the party or parties listed below as follows:

   **X**      Via CM / ECF Filing

_____   Via First Class Mail, Postage Prepaid

_____   Via Email

| | |
|---|---|
| Michelle R. Burrows | Anthony Rosta |
| 16869 SW 65th Ave #367 | 795 W 7th Ave |
| Lake Oswego, OR 97035 | Eugene, OR 97402 |
| | |
| Attorney for Plaintiff | Attorney for Plaintiff |

## CITY OF EUGENE

By: ___s/ Ben Miller_____
    Ben Miller, OSB #074690
    BMiller@eugene-or.gov
    Telephone: (541) 682-8447
    Facsimile:  (541) 682-5414

    Of Attorneys for Defendants
    Samuel Tykol and City of Eugene

CERTIFICATE OF SERVICE