**Ben Miller, OSB #074690**
BMiller@eugene-or.gov
Eugene City Attorney's Office
500 East 4th Avenue, Suite 301
Eugene, OR 97401
Telephone: (541) 682-8447
Facsimile: (541) 682-5414

Of Attorneys for Defendants
Samuel Tykol and City of Eugene

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| **OFELIA HERNANDEZ SANTIAGO,** Personal Representative of the Estate of Eliborio Rodrigues Jr., <br><br> Plaintiff, <br><br> v. <br><br> **SAMUEL TYKOL, JOHN DOE SUPERVISORS 1-3, CITY OF EUGENE,** a municipal subdivision of the State of Oregon, <br><br> Defendants. | Case No: 6:21-cv-01715-MTK <br><br> **DEFENDANTS SAMUEL TYKOL AND CITY OF EUGENE'S TRIAL MEMORANDUM** |

Trial has been set for November 17, 2025, and expected to take approximately 7 days. According to the Court's Trial Management Order Defendants Samuel Tykol and City of Eugene ("defendants") respectfully submit the following Pretrial Memorandum:

**I.      SUMMARY OF CLAIMS AND DEFENSES**

The claims set for trial are as follows: 1) Negligence claim by the Estate of Eliborio Rodrigues against Samuel Tykol for pre-shooting omissions and 2) Wrongful Death claim by the Estate of Eliborio Rodrigues against Samuel Tykol. Defendants deny plaintiff's claims and in addition have asserted justification, comparative negligence, and ORS 31.180 (felonious conduct barring recovery) as affirmative defenses.

PAGE 1 – DEFENDANTS SAMUEL TYKOL AND CITY OF EUGENE'S PRETRIAL MEMORANDUM

## II.     PROCEDURAL HISTORY

Plaintiff filed her complaint in federal court on November 29, 2021, against the City of Eugene, Samuel Tykol, and john doe supervisors. Defendants moved for summary judgment on all claims. [Doc. 25]. The court recommended granting the motion in part and denying it in part on August 19, 2024. [Doc. 55]. Specifically, the court recommended denying the motion as to the state law claims against Samuel Tykol. Those findings and recommendations were adopted by the District Court. [Doc. 65].

## III.    NEGLIGENCE UNDER STATE LAW

Plaintiff claims Samuel Tykol was negligent in his investigation and interactions with Eliborio Rodrigues resulting in his wrongful death. Plaintiff included the following specifications of negligence in the Complaint:

A.   In failing to allow the use of methods of non-lethal force to de-escalate the situation;

B.   In failing to conduct a reasonable and appropriate investigation of the stop including asking questions, forcing Mr. Rodrigues into a confrontation and using outmoded force response techniques against a passively resistant suspect;

C.   In failing to assess the danger properly and only use the amount and level of force to stop the perceived threat including using OC gas against a suspect on his knees facing away and not resisting;

D.   In failing to use proper tactics to maintain the safety and welfare of himself and others; and

E.   In using deadly force to shoot Mr. Rodrigues who was only suspected of jaywalking. Complaint, ¶ 73 [Doc. 1].

In ruling on the motion for summary judgment, this court found that at least some of the allegations amounted to omissions, and not intentional acts, and were, therefore, not barred by *Kasnick v. Cooke*, 116 Or. App. 580, 583 (1992) (evidence of intentional conduct cannot give rise to a negligence claim). F&Rs at 20 [Doc. 55]. In particular, this court cited to *Box v. State of Oregon* for the idea that a pre-shooting negligence claim could move forward. In *Box v. Oregon*

*State Police,* the decedent was lawfully present on his property and lawfully in possession of a gun when he exited his house to investigate trespassers, who ended up being State Police. 311 Or. App. at 351, 355-360 (2021). The theory was that troopers who went to the Box property in response to a reported assault, were negligent in their tactical approach to the Box property (by trespassing) and in failing to properly notify Box of their presence. *Id*. at 351. The troopers' negligence created conditions— significantly Box's possession of a gun at the time of the shooting—where the use of lethal force became probable and caused Box's death. *Id*. at 361. The plaintiff in that case also submitted an ORCP 47 E declaration that he had a qualified expert. *Id*. at 371-373.

Ultimately the Court of Appeals concluded that "a reasonable jury could conclude that there is a reasonable probability that the shooting would not have occurred absent the troopers' and OSP's negligent conduct, because it is the troopers' pre-shooting negligent conduct that put the troopers in a position to have to make a split-second decision whether or not to shoot and kill Box, and, with respect to Smyth, put Smyth in that position when it was known to OSP that his stress-induced deficiencies compromised his ability to follow protocol and properly make those kinds of tactical and split-second decisions." *Id*. at 374.

This case is a far cry from anything resembling *Box*. Here, Mr. Rodrigues knew he was being stopped, was told he was not free to leave, and knew that Officer Tykol was a peace officer. Mr. Rodrigues was not entitled to flee from the stop. Mr. Rodrigues was not entitled to resist arrest. Mr. Rodrigues was not entitled to strike Officer Tykol. Mr. Rodrigues was not entitled to attempt to disarm Officer Tykol of his Taser. These are not "interest[s] of a kind the law protects against negligent invasion[.]" *Solberg v. Johnson*, 306 Or. 484, 490-91, 760 P.2d 867 (1988). Rather, when a plaintiff is clearly responsible for the acts that resulted in their injury, summary judgment may be granted. *Vanderveen v. Lewis*, 48 Or. App. 105, 108, 615 P.2d 1203 (1980).

Unlike in *Box*, many of the specifications of negligence the Estate asserts do concern intentional conduct. Complaint, ¶ 72(a) (how he employed "methods of non-lethal force"),

¶ 73(c) (failing to "only use the amount and level of force to stop the perceived threat"), ¶ 73(e) ("using deadly force"). [Doc. 1]. These are claims for battery or assault under the guise of negligence. Such claims should be barred under *Kasnick v. Cooke*, 116 Or. App. 580, 583, 842 P.2d 440 (1992).

Even if some specifications of negligence were "omissions" and did not concern intentional acts, F&Rs at page 21 [Doc. 55] (failed to use proper de-escalation techniques and failed to follow the department's foot pursuit policy), the concept of foreseeability "refers to generalized risks of the type of incidents and injuries that occurred rather than predictability of the actual sequence of events." *Fazzolari v. Portland Sch. Dist. No. 1J*, 303 Or. 1, 734 P.2d 1326, 1338 (1987). Courts must consider "the factual setting of the case," when deciding whether "the harm suffered by the plaintiff is of the same general kind to be anticipated from the defendant's allegedly negligent conduct." *Piazza v. Kellim*, 360 Or. 58, 89, 377 P.3d 492 (2016) (en banc). Here, the generalized risk of harm resulting from Officer Tykol's investigation is that he might incorrectly conclude that Mr. Rodrigues committed a violation or arrest him. The generalized risk of harm resulting from Officer Tykol's act of pursuing Mr. Rodrigues is that he or Mr. Rodrigues would trip and be injured or run into an innocent third party and injure them. It is not that Mr. Rodrigues would engage in flight and then intentionally assault Officer Tykol forcing him to defend his life. It was not within the realm of foreseeable risks resulting from Tykol's initial contact or his pursuit.

No Oregon case holds that an officer can be found negligent for attempting to make an arrest, or even initiating a pursuit, where there is probable cause to do so. *See Lowrimore v. Dimmitt*, 310 Or. 291, 297, 797 P.2d 1027 (1990) ("the officer was not negligent in *instituting* the pursuit, for police officers have express authority to stop and detain persons for traffic infractions, ORS 810.410(3)(b)."). In vehicle pursuit cases, Oregon courts have only recognized that officers owe a duty to the public or innocent passengers in the vehicle, but certainly not to the fleeing criminal. *Lowrimore*, 310 Or. at 297; *Dee v. Pomeroy*, 109 Or. App. 114, 120-121, 818 P.2d 523 (1991).

PAGE 4 – DEFENDANTS SAMUEL TYKOL AND CITY OF EUGENE'S PRETRIAL MEMORANDUM

No Oregon case has held an officer negligent for continuing a foot pursuit of a solo fleeing criminal on an open public street. Considering the nature of plaintiff's offenses and that there was no traffic, pedestrians, or obvious hazards, this is a case where there is *no* evidence of negligence on this specification. Indeed, it would be far more foreseeable that the criminal who fought the officer would represent a threat to *third parties* he encountered if the officer discontinued the pursuit. *See Washa v. DOC,* 159 Or. App. 207, 225, 979 P.2d 273 (1999) *aff'd by an equally divided court*, 335 Or. 403, 69 P.3d 1232 (2003).

In essence, plaintiff is now bringing a negligence *per se* theory that was not pled in the Complaint. If a statute or rule prescribes a particular standard of care, then it may be appropriate for a court to adopt that as the standard to be applied in a common-law tort action. *See Bellikka v. Green,* 306 Or. 630, 650, 762 P.2d 997 (1988) (a statute can be used to establish a proper standard of care and to show that the defendant met or failed to meet that standard). However, plaintiff assumes that the pertinent internal policies do, in fact, establish a standard of care. But plaintiff has not shown whether any of the policies establish a standard of care for police officers. Only if such a standard is established would the court reach the next level of analysis, *viz.,* consideration whether Mr. Rodrigues was within a class of persons that the policy intended to be protected and whether the harm that befell him is of the kind that the policy was intended to prevent. *See Bob Godfrey Pontiac v. Roloff,* 291 Or. 318, 326, 630 P.2d 840 (1981) (stating foregoing as the test for determining whether a violation of a standard of conduct imposed by a statute constitutes negligence *per se*); *see also Scovill v. City of Astoria,* 324 Or. 159, 173, 921 P.2d 1312 (1996) (to the same effect).

When a party invokes a governmental rule to establish negligence, "the question is whether the rule, though it was not itself meant to create a civil claim, nevertheless so fixes the legal standard of conduct that there is no question of due care left for a factfinder to determine; in other words, that noncompliance with the rule is negligence as a matter of law." *Axen v. Am. Home Prod. Corp. ex rel. Wyeth-Ayerst Labs.*, 158 Or. App. 292, 307, opinion adhered to as modified on reconsideration sub nom. *Axen v. Am. Home Prod. Corp.*, 160 Or. App. 19 (1999).

PAGE 5 – DEFENDANTS SAMUEL TYKOL AND CITY OF EUGENE'S PRETRIAL MEMORANDUM

Here, neither de-escalation policy [Doc. 47-10] or the foot pursuit policy [Doc. 47-3] "so fix[] the legal standard of conduct" such that there is nothing left for a jury to resolve. *See Axen*, 158 Or. App. at 307. To the contrary, the requirements would, at most, require an officer to exercise reasonable care. *See Kim v. Multnomah Cnty.* 328 Or. 140, 153, 970 P.2d 631 (1998) (affirming trial court's grant of summary judgment on negligence *per se* claim where the statute would only require the defendant to exercise reasonable care). It does not provide "advance warning of the specific conduct that is prohibited." *Moody v. Oregon Community Credit Union*, 371 Or. 772, 799, 542 P.3d 24 (2023).

The plaintiff in a negligence action "must also prove an actual causal link between the defendant's conduct and the plaintiff's harm—that is, the plaintiff must prove 'cause in fact.'" *Towe v. Sacagawea, Inc.,* 357 Or. 74, 86 (2015). As the Oregon Court of Appeals explained, this rule "prevents jurors from speculating about causation in cases where that determination requires expertise beyond the knowledge and expertise of an ordinary lay person." *Baughman v. Pina*, 200 Or. App. 15, 18, 113 P.3d 459 (2005). In *Box*, the plaintiff submitted an ORCP 47 E declaration. 311 Or App at 371-373. Here, the Estate has no such witness disclosed in their witness list. At best, the Estate references the Eugene Police Auditor's recommendations. Those will be the subject of a motion in limine and objections, but, the Police Auditor's recommendation said nothing about causation. He limited his analysis to policy compliance, not predictions:

- "It is possible that the same result would have occurred had Officer Tykol made efforts to de-escalate this situation; however, engaging in hypotheticals does not assist in this analysis." Page 15 [Doc. 48-6];

- "I also recognize that had Officer Tykol waited for backup, it still could have been a tragic result; however, the numbers would favor the police." Page 22 [Doc. 48-6].

### IV.    LAW OF THE CASE

This court has already determined that Officer Tykol had probable cause to initially stop Mr. Rodrigues and that ORS 153.039(3) entitled Officer Tykol to detain Mr. Rodrigues to investigate a pedestrian violation. F&Rs at page 14 [Doc. 55]. This court also determined that

PAGE 6 – DEFENDANTS SAMUEL TYKOL AND CITY OF EUGENE'S PRETRIAL MEMORANDUM

Mr. Rodrigues committed additional crimes, including interfering with a peace officer (ORS 162.247(1) (2019 version)) by resisting Officer Tykol and running away from the stop. F&Rs at page 15 [Doc. 55]. This court also determined that Mr. Rodrigues turned and physically fought with Officer Tykol in the street. F&Rs at page 6 [Doc. 55]. Finally, this court correctly determined that Officer Tykol was entitled to utilize deadly force to defend himself as Mr. Rodrigues was on top of him, repeatedly striking him, and trying to disarm him of his Taser. F&Rs at pages 7 and 17 [Doc. 55].

All of these rulings are "law of the case" and serve to streamline the issues for the jury to consider. Rather than focusing on specific pre-shooting "omissions" plaintiff's jury instructions, exhibits, and witness list make it appear that plaintiff may attempt to re-litigate all of these issues. Under the "Law of the case" doctrine, "a court is ordinarily precluded from reexamining an issue previously decided by the same court." *Old Person v. Brown*, 312 F.3d 1036, 1039 (9th Cir. 2002). The doctrine is "founded upon the sound public policy that litigation must come to end." *Jeffries v. Wood*, 114 F.3d 1484, 1489 (9th Cir. 1997) (en banc). It also "serves to maintain consistency." *Id*. The doctrine has three exceptions: reconsideration is permitted when "(1) the decision is clearly erroneous and its enforcement would work a manifest injustice, (2) intervening controlling authority makes reconsideration appropriate, or (3) substantially different evidence was adduced at a subsequent trial." *Old Person*, 312 F.3d at 1039. Here there has been no relevant change in the circumstances or governing law between August 2024 and now.

## V.     COMPARATIVE NEGLIGENCE

Defendants raise the issue of comparative negligence. Specifically, defendants allege that plaintiff was negligent in a) being uncooperative and acting unreasonably under the circumstances; b) Failing to obey lawful orders from a public safety officer; c) Resisting arrest in violation of ORS 162.315; d) Engaging in fighting, violent, tumultuous and threatening behavior in violation of ORS 166.025, e) taking controlled substances that were not prescribed; and f) assaulting Officer Tykol. Specifically, in addition to evidence about his acting unreasonably by not following lawful orders, the evidence will show Mr. Rodrigues had consumed

methamphetamine and amphetamines at the time of his contact with Officer Tykol and these triggered him to respond violently to Officer Tykol.

## VI.     FELONIOUS CONDUCT

Finally, defendants raise ORS 31.180 as an affirmative defense. That statute provides: "(1) It is a complete defense in any civil action for personal injury or wrongful death that: (a)The person damaged was engaged in conduct at the time that would constitute aggravated murder, murder or a Class A or a Class B felony; and (b)The felonious conduct was a substantial factor contributing to the injury or death." ORS 31.180(1). Defendants contend Mr. Rodrigues committed numerous Class A or B felonies including Escape in the First Degree, Assault in the Second Degree, Assault in the First Degree, Attempted Manslaughter in the First Degree, Attempted Murder in the Second Degree, and Attempted Murder in the First Degree.

The street surface qualifies as a "dangerous weapon" under Oregon law. *See State v. Glazier*, 253 Or. App. 109, 114, 288 P.3d 1007 (2012), *rev. den.*, 353 Or. 280, 298 P.3d 30 (2013) (holding that a hard wood floor was a dangerous weapon that was "readily capable of causing serious physical injury to the victim * * * where [the] defendant repeatedly struck her head against it"), and *State v. Reed*, 101 Or App 277, 279, 790 P.2d 551, rev. den., 310 Or. 195, 795 P.2d 554 (1990) (holding that a sidewalk was a dangerous weapon where the defendant had repeatedly struck the victim's head against it).

The defense is not available if the injury or death resulted from the use of physical force that was not justifiable under the standards established by ORS 161.195 to 161.275. Hence, why defendants are requesting jury instructions about justification for force and deadly force.

DATED this 22nd day of July, 2025.

**CITY OF EUGENE**

By:     s/ Ben Miller
Ben Miller, OSB #074690
BMiller@eugene-or.gov
Telephone: (541) 682-8447
Facsimile:  (541) 682-5414

Of Attorneys for Defendants
Samuel Tykol and City of Eugene

PAGE 8 – DEFENDANTS SAMUEL TYKOL AND CITY OF EUGENE'S PRETRIAL MEMORANDUM

## CERTIFICATE OF SERVICE

I certify that on this 22nd day of July, 2025, I served or caused to be served a true and complete copy of the foregoing **DEFENDANTS SAMUEL TYKOL AND CITY OF EUGENE'S PRETRIAL MEMORANDUM** on the party or parties listed below as follows:

| | |
|---|---|
| __X__ | Via CM / ECF Filing |
| _____ | Via First Class Mail, Postage Prepaid |
| _____ | Via Email |

| | |
|---|---|
| Michelle R. Burrows | Anthony Rosta |
| 16869 SW 65th Ave #367 | 795 W 7th Ave |
| Lake Oswego, OR 97035 | Eugene, OR 97402 |
| | |
| Attorney for Plaintiff | Attorney for Plaintiff |

**CITY OF EUGENE**

By: ___s/ Ben Miller___
 Ben Miller, OSB #074690
 BMiller@eugene-or.gov
 Telephone: (541) 682-8447
 Facsimile:  (541) 682-5414

 Of Attorneys for Defendants
 Samuel Tykol and City of Eugene