Michelle R Burrows OSB 861606
LAW OFFICE MICHELLE R. BURROWS P.C.
16869 SW 65th Ave # 367
Lake Oswego, OR 97035
503-241-1955
Michelle.r.burrows@gmail.com
www.oregoncivilrights.com

Anthony Rosta OSB 810970
ROSTA & CONNELLY, P.C.
795 W 7th Ave
Eugene, OR 97402
541-513-7900
tony@rosta-connelly.com

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

Eugene Division

| | |
|---|---|
| OFELIA HERNANDEZ SANTIAGO, Personal Representative of the Estate of Eliborio Rodrigues Jr., <br><br> Plaintiff, <br><br> v. <br><br> SAMUEL TYKOL, JOHN DOE SUPERVISORS 1-3, CITY OF EUGENE, a municipal subdivision of the State of Oregon, <br><br> Defendants. | No: 6:21-cv-01715-MTK <br><br><br> PLAINTIFF'S TRIAL MEMORANDA |

Plaintiff submits this Trial Brief pursuant to the Trial Management Order (Doc. 72).

## I.     INTRODUCTION

The legal and factual issues in this case were thoroughly briefed and argued during Rule

56 Motions filed by Defendants. Doc. 25 to 39, 46-50. This court issued Findings and

Recommendations which were entered by Judge McShane. Doc. 55, 65. Defendants objected to

the F&R. Doc. 59-64. Following the Orders by both Judge Kasubhai and McShane, the

remaining issues in the case are two negligence-based claims plead in Plaintiff's Complaint

(Doc. 1) as Claim for Relief 5 (Wrongful Death) and 6 (Negligence based on failure to follow

procedures, failing to provide adequate supervision on the use of force and investigations). Both

tort claims are supported by and incorporate 21 pages of allegations, details of city policies, and

conduct of the officers involved.

## II.      LEGAL CLAIMS

*A. Claims for Relief:*

1. <u>Wrongful Death: Fifth Claim for Relief.</u> Doc. 1 at ¶¶ 67-70.

The Complaint *The act of shooting Mr. Rodrigues was reasonably foreseeable to cause

his death and was not justified by the facts and circumstances then present."* ¶ 67.

2. <u>Negligence: Sixth Claim for Relief</u>:

This claim alleges negligence for acts prior to the deadly force and which were

reasonably foreseeable to lead to death including failure to follow department policies, failure to

de-escalate, tasing, use of gas, force in detention, no probable cause arrest, and failure to train on

proper uses of force and de-escalation. ¶ 73.

*B. Findings of Fact in F&R.*

Defendants take the position the Findings and Recommendations (F&R) (Doc. 55) issued

by this court on 8/19/24 created findings of fact foreclosing evidence to the contrary. The court

did find that the use of force, the shooting itself, did not offend the Fourth Amendment principles

making findings of fact including "*There is no genuine dispute from the evidence that Plaintiff

posed a threat to Officer Tykol. See Smith v. City of Hemet*, 394 F.3d 689, 702 (9th Cir. 2005)

(en banc) (explaining that the "most important single element" from Graham is "whether the

suspect poses an immediate threat to the safety of the officers or others"). "*The record demonstrates Plaintiff was on top of Officer Tykol, punching him and trying to take his Taser. . . . Plaintiff has not presented evidence to dispute that Plaintiff was actively resisting arrest*".

Plaintiff could not present any contradictory facts because the only living witness to these 'facts' is Officer Tykol who has every incentive to create a version of events to justify his actions. The court believed Tykol's version of facts. But this court lacks the power to assess the credibility of witnesses during the Summary Judgement phase yet did so in the F&R. The court's role is not to weigh the evidence or determine the truth but only to determine whether there is a genuine issue of fact for trial. *Playboy Enters., Inc. v. Welles*, 279 F.3d 796, 800 (9th Cir. 2002). An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson* v. Liberty Lobby, Inc, 477 U.S. 242, 248 (1986).

This principle "applies with particular force where the only witness other than the officer was killed during the encounter". *Koon v. Prince George's Cty*, 2019 U.S. cit. LEXIS 47698 (March 22, 2019)(Md. Dist Ct.) *citing to Gonzalez v. City of Anaheim*, 747 F.3d 789, 794-795 (9th Cir. 2014).This court "must also look at the circumstantial evidence that, if believed, would tend to discredit the police officer's story, and consider whether this evidence could convince a rational factfinder that the officer acted unreasonably." *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994); *Sabbe v. Wash Cnty. Bd. of Comm'rs*, 2023 U.S. App. 27553 (9th Cir. 10/17/23). Plaintiff believes a jury will find Tykol's story less than credible and conclude the officer's conduct and behavior violated existing standards and was negligent.

However, the court provides a more nuanced view in writing of the disputes on the two negligence claims also noting that "Oregon law carries greater protections than Section 1983". F&R at 20-21.

*There are genuine issues of fact regarding whether Officer Tykol's pre-shooting conduct was negligent. "When, as here, reasonable persons might reach different conclusions about the facts, the establishment of those facts is for the jury . . . ." Gilker v. Baker, 576 F.2d 245, 247 (9th Cir. 1978). In the summary judgment record, there are several facts that could lead a reasonable juror to conclude Officer Tykol negligently carried out the investigation, arrest, and use of force. For example, the Eugene Police Auditor's Report concluded that Officer Tykol failed to use proper de-escalation techniques and failed to follow the department's foot pursuit policy. Police Auditor's Report at 15, 21–22. The report also discussed the auditor's concerns regarding the reasonableness of Officer Tykol's use of force when effecting the initial arrest: [A]t the point that Officer Tykol engaged physically with Mr. Rodrigues, Mr. Rodrigues had committed a pedestrian violation and appeared to be passively resisting Officer Tykol's orders. Officer Tykol's physical engagement should be reviewed for reasonableness, pursuant to EPD policy and Supreme Court precedent in Graham v. Connor, 490 US 386 (1989).*
*Id. at 17. Officer Tykol's deposition reflects the fact that he was the first one to use physical force, and his role in the rapid escalation of the physical nature of this conflict further supports the inference that he unreasonably created a foreseeable risk of harm to Plaintiff. These facts demonstrate that there is a genuine issue of fact regarding whether Officer Tykol breached his duty of care owed to Mr. Rodrigues. See, e.g., Tykol Dep. at 1:24-25. After assessing these facts, the jury may reasonably determine that this conduct was not negligent. But it is ultimately up to the jury—and not this Court—to make that determination at trial. Box, 311 Or. App. at 374. Defendants' motion should be denied as to Plaintiff's negligence claim against Officer Tykol.*

F&R, Doc. 55 at 21-22.

*For the moment, Plaintiff has identified "evidence from which a reasonable juror could infer that, absent [the department's or the officer's] negligence, there was a reasonable probability that the shooting would not have occurred." Box, 311 Or. App. at 369 (rejecting the same arguments Defendants make here, and concluding "that plaintiff is not precluded from proving, as a matter of law, that the pre-shooting negligence was a cause of [Plaintiff]'s death"). Interpreting the evidence in the light most favorable to the Plaintiff, the Court should find a reasonable juror could conclude Officer Tykol's negligence could have caused Plaintiff's death, and allow the negligence claim to proceed notwithstanding Defendants' argument that Officer Tykol was statutorily authorized to use deadly force at the end of the encounter.*

F&R, Doc. 55 at 24.

C.  *Key Areas of Factual Dispute*

The essential story of Eli Rodrigues's last few minutes of life is stunningly brief and difficult to comprehend. Mr. Rodrigues and his family struggled financially, often living in their car while trying to put together enough money to feed their kids. Mr. Rodrigues had a history of

working a number of jobs over the years, not making a great deal of money but enough to have a home, food, and raise his children. In 2017, Mr. Rodrigues was detained and hurt by a University of Oregon officer. Mr. Rodrigues became extraordinary wary and afraid of police officers. An incident with eerie similarities to this one ensued and Mr. Rodrigues was arrested and the subject of physical abuse for gathering cans for redemption. That incident likely governed much of Mr. Rodrigues's reaction when confronted in an aggressive manner by Officer Tykol for essentially jay walking.

Mr. Rodrigues is Hispanic. He was dressed in dark warm clothing in late November when he was seen by Officer Tykol walking in a neighbor he did "not fit in". Mr. Rodrigues and his partner had split up with each person taking different routes to gather cans and bottles. Their car was full of such cans in plastic bags. Officers found it quite quickly after the shooting. Mr. Rodrigues had his driver's license in his pocket and was carrying a flashlight and plastic collection bags when confronted by Officer Tykol. Tykol denied Mr. Rodrigues had either.

Officer Tykol stopped Rodrigues at approximately 12:32 a.m. on November 30, 2019. Tykol did not believe Rodrigues was committing a crime at that point but claimed Rodrigues was "required" by law to provide his identification when asked by law enforcement. This is not correct. Tykol despite his belief told Rodrigues he was not free to leave. "I'm talking to you because you're walking in the road". There are very few sidewalks on Acacia Street. Despite numerous requests from Rodrigues as to the purpose of the stop Tykol refused to explain his reasons other than walking in the street and crossing illegally. Rodrigues called frequently for a sergeant or a "real officer". Because the Bodycam was lost and disengaged about a minute into the encounter, we will never know what truly happened. At one point though we can hear Mr. Rodrigues calling for help repeatedly as his voice becomes filled with more fear.

Tykol tried to force Rodrigues to the ground, pepper spray him for failure to comply with commands and not due to any threat, attempts to handcuff him, and is implementing the dangerous and unlawful force tactic he had been taught by his "coaches": Ask, Tell, Make. "Ask them to do something. If they don't do it, you tell them to do something. And if they don't do it, you make them". Tykol apparently still relies on the 'continuum of force' which has been discredited and no longer taught at the DPSST training academy and has been replaced with *Graham v. Connor* in EPD policies. Tykol could not explain *Graham v. Connor*.

The entirety of Tykol's efforts are forceful and an escalation of the situation to the point where Tykol chases Rodrigues twice and ultimately shoots Rodrigues three times. All the events occurred within 3 minutes. At no time during the video did Rodrigues actively resist but instead would not sit down and would not provide his identification. During that exchange Rodrigues's voice becomes very strained and worried. Tykol pepper sprays Rodrigues who is not fighting or resisting but because he won't sit down. Tykol puts his hands on Rodrigues first by grabbing Rodrigues instead of talking to him and then used two focused blows to force Rodrigues to sit down. Rodrigues runs away frightened. Tykol gives chase ultimately tackling Rodrigues and is on top of him. The camera fell off just before this moment and turned off. Citizens have the right to defend themselves even against police officers.

Tykol describes a rather improbable conflict on the ground as he tries to tase Rodrigues while he's on the ground after he tackled Rodrigues. Tykol knew backup was on the way but he proceeded foolishly forward. Tykol forwent each and every opportunity to de-escalate this jaywalking encounter, instead chasing Rodrigues down, claiming at that point Rodrigues suddenly turned to engage Tykol in a physical fight. Rodrigues had never tried to hit, kick or fight Tykol before, ran away in fear, and according to Tykol, suddenly wanted to fight an officer

with a full array of weapons. Plaintiff posits this entire scenario is likely not correct and is a story created by Tykol knowing the camera was not functioning.

Tykol claims he felt no danger from Rodrigues when he ran away and admits Rodrigues was calling to the neighbors for help. Tykol claims Rodrigues started punching him. Tykol says he embraced Rodrigues to stop the "pummeling". Rodrigues broke free again and ran away a second time still being followed by Tykol until the officer actually tackled the other man. Tykol tried to tase Rodrigues while they were in close contact—this violates the training on the use of tasers.  Two taser prongs were found imbedded in Rodrigues's clothes. Tykol was punching Rodrigues who was defending himself and moved the barrel of the Taser away from his body. Tykol pulled the taser trigger tasing himself.

Tykol then claims he was fighting Rodrigues who was "grappling with the Taser" but then testifies Rodrigues was punching the officer in the face. Tykol had no bruising or punch marks on his face and two taser marks on his back, not his thigh. At that point Tykol shot Rodrigues three times.

Tykol escalated this situation repeatedly. Tykol failed to follow department policies on de-escalation, foot pursuits, tasing, calling for backup, using an improper and outdated method for the use of force, failed at every step of the way to slow down the encounter and engage Mr. Rodrigues in a professional and calm manner. Officer Tykol created his own exigency through his negligence and ineptitude. Mr. Rodrigues was not combative or abusive nor did he engage in violence. The only one we know who did engage in violence was Tykol who then created a wild and fanciful story to explain the inexplicable. The shots were fired while Tykol was underneath Rodrigues yet there was no blood on Tykol's uniform, his person or anywhere. By the time

officers arrived to assist Tykol, Mr. Rodrigues was lying on his stomach with a large pool of blood beneath his body.

Tykol's entire version of what transpired is a bit farfetched and has almost no extrinsic support. The jury will have to sift through everything to determine whether Tykol is telling the truth and does the story point to negligence and harm.

## III.    DEFENSES

Defendants raise several defenses to the negligence and wrongful death claims.

A. *Justification*. Answer (Doc. 8) ⸿ 79

Justification is also known as "good faith" defense which only apply to police officer while they are making an arrest. Justification only applies to potential criminal liability by the officer and does extend to barring civil liability. See *Hayes v. City of Portland* 2020 U.S. Dist. LEXIS 41337, 32-27; see also ORS 161.205, 161.209 and 161.219(3); *Ballard v. City of Albany,* 221 Or App 630, 641, 1919 P3d 679 (2008); *Gigler v. Klamath* Falls, 21 Or App 751 (1975). The holding in *Hayes* concerning the limitation of justification and good faith to criminal cases of law enforcement officers only was upheld in *Olmsted v. Douglas County*, 2023 US. Dist. LEXIS 132692 (CA 2023) Furthermore, the *Hayes* case noted that it is beyond the federal courts jurisdiction to determine whether a *common law defense* would apply to intentional state torts citing to *Humbird v. McClendon*, 281 Or 83, 85-86 (1978). Federal courts lack jurisdiction to opine on state law.

B. *Felonious Conduct under ORS 31.180*. Answer (Doc. 8) ⸿ 89

Defendants raise the defense to civil liability found at ORS 31.180 applies to this situation. Defendants bear the burden of proof on this defense which is defined by statute and *Harryman v. Fred Meyer*, 289 Or App 324, 330-331, 412 P. 3d. 219 (2017) *citing to Johnson v. O'Malley*

*Brothers Corp*, 285 Or App 804, 816, 397 P.3d 554 (2017), OEC 305. The felonious conduct

defense is NOT available to defendants if the force used "was *not* justifiable". *Harryman v. Fred*

*Meyer* 289 Or App 324, 330-331 (emphasis in the original).

> *(1) It is a complete defense in any civil action for personal injury or wrongful death that:*
>
>> *(a) The person damaged was engaged in conduct at the time that would constitute aggravated murder, murder or a Class A or a Class B felony;* ***and***
>> *(b) The felonious conduct was a substantial factor contributing to the injury or death.*
>
> *(2) To establish the defense described in this section, the defendant must prove by a preponderance of the evidence the fact that the person damaged was engaged in conduct that would constitute aggravated murder, murder or a Class A or a Class B felony.*
>
>> *\* \**
>
> *(5) The defense established by this section is not available if the injury or death resulted from the use of physical force that was not justifiable under the standards established by ORS 161.195 ("Justification" described) to 161.275 (Entrapment).*

**ORS 31.180**

The defense is not available if death or injury resulted from *unjustifiable* physical force.

ORS 161.195, 161.205, 161.215 all flesh the standard of what is justifiable force more

thoroughly. Of note is ORS 161.215(1)(a) and (b).

> *(1) Notwithstanding ORS 161.209 (Use of physical force in defense of a person), a person is not justified in using physical force upon another person if:*
>
>> *(a) With intent to cause physical injury or death to another person, the person provokes the use of unlawful physical force by that person.*
>> *(b) The person is the initial aggressor, except that the use of physical force upon another person under such circumstances is justifiable if the person withdraws from the encounter and effectively communicates to the other person the intent to do so, but the latter nevertheless continues or threatens to continue the use of unlawful physical force.*

ORS 161.215

> Citizens have the right to use physical force in defense of themselves. ORS 161.209
> *Except as provided in ORS 161.215 (Limitations on use of physical force in defense of a person) and 161.219 (Limitations on use of deadly physical force in defense of a person), a person is justified in using physical force upon another person for self-defense or to*

*defend a third person from what the person reasonably believes to be the use or imminent use of unlawful physical force, and the person may use a degree of force which the person reasonably believes to be necessary for the purpose.*

ORS 161.209

Oregon limits on the use of deadly force by police officers is framed at ORS 161.242

> *(1) A peace officer may use deadly physical force upon another person only when it is objectively reasonable, under the totality of circumstances known to the peace officer, to believe that the person poses an imminent threat of death or serious physical injury to the peace officer or to a third person and the use of deadly physical force is necessary to:*
>> *(a) Make a lawful arrest when the peace officer has probable cause to believe the person has committed a **violent felony**; (emphasis added)*
>> *(b) Defend the peace officer or a third person from the imminent threat of death or serious physical injury; **or***
>> *(c) Prevent the escape from custody of the person when the peace officer has probable cause to believe the person has committed **a violent felony**.*
> *(2) Prior to using deadly physical force upon another person, if the peace officer has a reasonable opportunity to do so, the peace officer shall:*
>> *(a) Consider alternatives such as verbal de-escalation, waiting, using other available resources and techniques if reasonable, safe and feasible, or using a lesser degree of force; **and***
>> *(b) Give a verbal warning to the person that deadly physical force may be used and provide the person with a reasonable opportunity to comply.*
> *\* \* \**
> *(4) As used in this section, "violent felony" has the meaning given that term in <u>ORS 419A.004 (Definitions)</u>.* [1]

## ORS 161.242

Defendants are required to prove each element of this defense including whether Mr. Rodrigues was engaged in a violent felony at the time and whether the use of force was justified under the totality of circumstances. The facts of the stop, detention and contact between the officer and Rodrigues are largely the version advanced by Officer Tykol who, himself, makes numerous contradictory statements. If the jury finds Tykol was negligent and created the situation, perhaps crafted his version of the events painting Mr. Rodrigues as the aggressor and

---

[1] "Violent felony" means any offense that, if committed by an adult, would constitute a felony and:
**(a)** Involves actual or threatened serious physical injury to a victim; **or**

find him less than credible, then this defense is likely not available and the jury should be fully instructed on its elements.

C. *Comparative Fault: Answer (Doc. 8)* ¶ *82.*

Defendants argue Mr. Rodrigues' own negligence contributed to Tykol's negligent behavior before the shooting and also contributed to the shooting itself. The comparative fault affirmative defense in Oregon allows the jury to compare the fault of the plaintiff with the fault of the defendant, and any damages allowed in such case are diminished in proportion to the percentage of fault attributable to the plaintiff. ORS 31.600 . Whether a plaintiff's conduct constitutes comparative fault will turn on whether the harm was foreseeable, how the class of harm is defined, and whether plaintiff's conduct relates and contributes to the defendant's negligence.

1. Plaintiff must take some action or failed to act.

The test in Oregon for comparative fault is whether the plaintiff "took some action or failed to take some action which a reasonable person could have foreseen would increase the risk of harm to the plaintiff, and that the plaintiff did indeed suffer harm of the type which could have been foreseen." *Son v. Ashland Cmty. Healthcare Servs.*, 239 Or. App. 495, 507 (2010) (citing *Dahl v. BMW*, 304 Or. 558, 563 (1987) (internal quotation marks omitted)). General common-law negligence principles apply, only they must be considered in the context of the plaintiff's conduct and plaintiff's injury. *Son*, 239 Or. App. at 507 (citing *Dahl*, 304 Or. at 563).

2. Plaintiff's action must unreasonably create a foreseeable risk of the type of harm

Conduct that unreasonably creates a foreseeable risk of the type of harm that befell the plaintiff constitutes comparative fault. *Fazzolari By and Through Fazzolari v. Portland School Dist. No. 1J*, 303 Or. 1, 18 (1987). "Foreseeability refers to generalized risks of the type of

incidents and injuries that occurred rather than the predictability of the actual sequence of events," *Fazzolari*, 303 Or. at 21, and involves a prospective judgment about a course of events, *Chapman v. Mayfield*, 358 Or. 196, 206 (2015). The risk of harm need not be more probable than not; rather, the question is whether a reasonable person considering the potential harms that might result from his or her conduct would have reasonably expected the injury to occur. *Id.* Further, foreseeability does not encompass all sources of injury in a dangerous world, nor does it demand precise mechanical imagination or paranoid view of the universe. *Fazzolari*, 303 Or. at 21. Though foreseeability often goes to the jury, the question of foreseeability is properly kept from the jury where a plaintiff's injury and the manner of its occurrence are so highly unusual that the court can say that as a matter of law a reasonable actor would not have reasonably expected the injury to occur. *Piazza v. Kellim*, 360 Or. 58, 74 (2016) (en banc).

It is difficult to imagine a Plaintiff stopped for jaywalking can foresee being shot and killed by a police officer. Perhaps Mr. Rodrigues' fear of Tykol was justified given what he experienced and witnessed from the police officer.

3.   Limits on what consequences are foreseeable

Oregon courts place limits on what consequences are foreseeable. For example, in *Moore*, a personal representative sued two taverns for negligence after the taverns served visibly intoxicated patrons who thereafter shot a taxi driver. *Chapman*, 358 Or. at 212 (discussing *Moore v. Willis*, 307 Or. 254, 256–58 (1988)). The Oregon Supreme Court held that where a complaint did not allege any facts connecting overconsumption of alcohol to violence, the mere fact that a patron is visibly intoxicated does not make it foreseeable that serving the patron alcohol creates an unreasonable risk that the patron will become violent. *Id.* at 212–13 (discussing *Moore*, 307 Or. at 256–61). Another example is negligence cases involving third-party criminal activity, where a plaintiff must allege concrete facts demonstrating that a

reasonable person in the defendant's position would have foreseen that the person or location and circumstances posed a risk of criminal harm to persons such as the plaintiff. *Piazza*, 360 Or. at 81. In such cases, evidence of generic fact that criminals commit crimes is insufficient to establish foreseeability. *Id.* at 86 (discussing *Buchler v. State By and Through Oregon Corrections Div.*, 316 Or. 499, 511 (1993)).

    4.  <u>How is the class of harm characterized</u>

       Next, whether a particular harm is foreseeable turns in large part on how the class of harm is characterized in a given case. *Stewart v. Jefferson Plywood Co.*, 255 Or. 603, 610 (1970). The definition of the class of harm must be somewhere between "very generalized" and a "detailed, mechanism-of-harm description." *Id.* at 610 (citing Keeton, <u>Legal Cause in the Law of Torts 51</u> (1963)). But "even though the precise mechanism of harm need not be foreseeable," the type of harm that a plaintiff risks as a foreseeable consequence of his own conduct in a comparative fault case must be described "with reference to the particular factual circumstances of the case, as gleaned from the pleadings and evidence in the record." *See Chapman*, 358 Or. at 220.

       The Oregon Supreme Court decision *Stewart v. Jefferson Plywood Co.* is illustrative of the principles of foreseeability and defining the class of harm based on the plaintiff's theory of liability. *Jefferson Plywood Co.*, 255 Or. 603. There, the defendant caused a fire and the plaintiff fell through a concealed skylight while trying to protect a nearby building from the flames. *Id.* at 605. Foreseeable risks were not limited to being burned by the fire, but also included physical injury from falling off a ladder or through the roof. *Chapman*, 358 Or. at 207 (discussing *Jefferson Plywood Co.*, 255 Or. at 610). The court acknowledged that while falling through a concealed skylight "might not be a common cause of injury, that circumstance

was not so uncommon that the defendant could not reasonably foresee the risk of harm." *Id.* at 207 (discussing *Jefferson Plywood Co.*, 255 Or. at 610).

In defining the class of harm, the court "assesse[d] the overall 'setting for possible injury' under the plaintiff's theory of liability." *Id.* at 208 (quoting *Jefferson Plywood Co.*, 255 Or. at 610). In that case, under the plaintiff's theory of liability, the class of harm was defined as possible injuries in the course of fighting a fire. *Id.* (quoting *Jefferson Plywood Co.*, 255 Or. at 611).

5.   Plaintiff's negligence must relate to the defendant's negligence

Plaintiff's negligent conduct can form the basis of a comparative fault defense when it relates and contributes to the defendant's negligence at issue. *Gardner v. Oregon Health Sciences University*, 299 Or. App. 280, 290 (2019) (citing *Son*, 239 Or. App. at 512). A plaintiff's negligence must be an element in the transaction on which the defendant's negligence is based, *see Son*, 239 Or. App. at 509, or affect the event for which recovery is sought. *Mills v. Brown*, 303 Or. 223, 229 (1987) (quoting *Sandford v. Chev. Div. Gen. Motors*, 292 Or. 590, 606 (1982)). In medical malpractice the focus is on the injury caused by the defendant's negligence, not the plaintiff's original injury. *Son*, 239 Or. App. at 508-509. A comparative fault defense requires the "plaintiff's negligent conduct relate and contribute to the negligent treatment, because it is the negligence treatment that causes the injury that is at issue. *Id.* at 509. In a negligence action arising from the decedent's suicide, facts constituting a viable comparative fault defense included decedent providing incomplete or inaccurate information to the provider, withholding information from the provider, and in other ways declining, refusing, or failing to heed the provider's advice or treatment plan. *Gardner*, 299 Or. App. at 291. Conversely, the court noted that facts that did not relate and contribute to the harm caused by the defendant's

negligence, but instead related to the conduct that created the initial need for treatment, could not have constituted a comparative fault defense. *Id.* at 291–92.

In order to argue the comparative fault defense Defendants must prove that Plaintiff's conduct related and contributed to the City's negligence. Allegations of Plaintiff's comparative fault that do not relate or contribute to the City's various failures cannot be the basis of the comparative fault defense.

None of Plaintiff's behavior can be the basis of any claim of comparative fault. Rodrigues was stopped by a uniformed, armed police officer. Plaintiff is not responsible for Tykol's lack of understanding of the law,  failure to de-escalate,  failure to call for backup, Tykol's failure to proper understanding what he can and cannot do to "make" individuals comply with verbal orders..  Mr. Rodrigues can be heard calling for help while chased by Tykol when he tried to avoid the force being escalated against him. Tykol's use of the pepperspray and focused blows was unjustified and had nothing to do with any force used by Rodrigues. Rodrigues is not responsible for Tykol's violations of the law and using unjustified force.

Dated this 22nd day of July 2025.

Respectfully submitted,


/s/ Michelle R. Burrows
Michelle R. Burrows OSB86160
Of Attorneys for Plaintiff