Michelle R Burrows OSB 861606
LAW OFFICE MICHELLE R. BURROWS P.C.
16869 SW 65th Ave # 367
Lake Oswego, OR 97035
503-241-1955
Michelle.r.burrows@gmail.com
www.oregoncivilrights.com

Anthony Rosta OSB 810970
ROSTA & CONNELLY, P.C.
795 W 7th Ave
Eugene, OR 97402
541-513-7900
tony@rosta-connelly.com

    Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

Eugene Division

| | |
|---|---|
| OFELIA HERNANDEZ SANTIAGO, Personal Representative of the Estate of Eliborio Rodrigues Jr., <br><br> Plaintiff, <br><br> v. <br><br> SAMUEL TYKOL, JOHN DOE SUPERVISORS 1-3, CITY OF EUGENE, a municipal subdivision of the State of Oregon, <br><br> Defendants. | No: 6:21-cv-01715-MTK <br><br> DECLARATION OF MICHELLE R. BURROWS |

I, Michelle R. Burrows, being duly sworn, say:

1. I am a licensed attorney in Oregon and have represented Plaintiff throughout the above captured litigation.

2. While I was responding to various objections to exhibits and witnesses filed by defendants I saw that the City claimed Plaintiff failed to provide numerous exhibits

1 -

during discovery. I made brief responses to these claims in my formal submissions however, I believe in an abundance of caution I should support those contentions under Fed. R. Civ. P 11 through my declaration.

3. My office has litigated against the Eugene City Attorney since the inception of this litigation. Generally, discovery has been easy with no issues or conflicts. The city claims in its recent trial submission that Plaintiff failed to provide several documents in discovery, to wit: The Autopsy Report, Funeral Expenses. It is unclear whether claims are also made about the earnings information.

4. Certain matters were complicated by the individuals who were in charge of certain documents requested by defendants. Several discussions occurred to locate and produce documents to the City, however, the family was homeless and lacked sufficient financial resources to store or maintain documentation. Ms. Yang suffers from severe mental trauma after Mr. Rodrigues death and so assistance was required from other sources. Throughout discovery I did communicate with Mr. Miller about some of the difficulties and realities inherent in representing fragile and homeless individuals.

5. We worked with the client answering extensive interrogatories and locating documentation. We also called upon third party sources including sending subpoena. I attempted at every stage to advise the City Attorney of our ongoing efforts to comply with requests. But there were several documents not in our clients custody and control, namely the social security records and the Autopsy Report.

6. My office stores all information electronically on either Clio or Dropbox. We do not keep hard copies. We have our folders created by client name and within the client folder we have numerous subfolders for items such as communications, pleadings, depositions etc.

In the Discovery folder we have more subfolders labeled by the entity which provides the information including Defendants, clients, Response to Subpoena. We also keep a separate folder for all discovery provided to the defendants in discrete folders and all are Bates numbered. This folder then will include the actual discovery which is provided together with the date it is provided.

7. We send separate links to specific folders which are password protected to the defendants. But the links itemize the actual discovery, the date it was delivered, the date the passcode is activated and when the download is complete. Dropbox also keeps separate tabulation of which entities access Dropbox folders or links.

8. The discovery we sent to the City is as follows:

    a. Identified as 220312 Bates 00001-00048: 19119 Rodrigues Tox Results sent 9/21/22, Eli Rodrigues Photos 9/21/22, McKenzie Willamette Records 9/21/22, Medical Examiner Report 9/21/22, Social Security Information 9/21/22,

    b. Identified as 220921 Bates 00049-00145: Liberty Tax 9/21/22, Notably Well-Dressed 9/21/22, U-Haul 9/21/22, Willamette 9/21/22

    c. Identified as 221014 Bates 00146-00162: PeaceHealth Sacred Heart-billing, 10/14/22, PeaceHalth Sacred Heart-Records 10/15/22. One document was copied for Defendants described as "undeliverable" which is a returned envelope for Frankies Top Shop which held the subpoena for Frankies. This returned envelope with the post office notice of inability to deliver was sent to Defendants.

    d. Identified as 221014 Bates 00146-00162 were numerous photographs of the Rodrigues family. These were delivered 5/4/25

e.  Identified as 230623 Bates 00163-00185 include emails and Texts from and to the family on the topics requested by the City. These were delivered 5/4/25.

f.  Identified as 230718 Bates 00186-00197. This includes numerous media articles, copies of subpoena, the fee agreement and whatever documents we could find responsive to the City's request.

g.  Also provided in the link were Plaintiff's responses to interrogatories which included criminal history information, financial data, witness information, all known addresses, all categories of damages sought by the Estate

h.  And email to Mr. Miller demonstrates that he received amendments to the interrogatories on October 25, 2022.

i.  Plaintiff sent third party subpoena to Janis Gaines and Notably Well Dressed Homes, Liberty Tax, PeaceHeath Sacred Heart, Top Shop, U-Haul and Willamette. Copies of the subpoena were sent to the City on or about 5/4/22.

j.  Plaintiff did not possess the Autopsy Report until the Personal Representative secured it with a ROI in person. However, the City of Eugene and IDFIT had copies of at least the preliminary report, and the ME investigator report together with the Toxicology result. The City provided to Plaintiff the Investigator report and the tox screen but not the Autopsy report.

k.  Plaintiff reviewed Chief Skinner's and Mark Gissiner Police Auditors reports on the Use of Force. Gissiner's Report includes:

*"The preliminary autopsy report indicated three gunshot wounds to the abdomen from close range, the first being near contact at the left abdomen and terminating in the tissue of the right hip (left to right, downward and slightly front to back). A slug was recovered from the right hip. The second gunshot wound was of intermediate range to the left abdomen, terminating at the right abdominal cavity. A slug was recovered from the right abdominal cavity. The third was an intermediate range*

4 -

> *gunshot wound to the left abdomen, terminating in the right abdominal cavity where a slug 6 fragment was recovered. The forensic pathologist also noted minor abrasions of the left and right knees, right leg below the knee and right lower back. A preliminary drug screen was positive for methamphetamine, amphetamine, opioids and THC. I (DA) asked the forensic pathologist if the injuries he noted and the bullet trajectories were consistent with the description of the incident by Officer Tykol (firing three times with his right hand into the abdomen of Mr. Rodrigues as Mr. Rodrigues was on top of Officer Tykol). Dr. Davis told me the injuries were consistent with the report of the incident. A Taser probe was attached to Mr. Rodrigues' black fleece jacket, but did not penetrate to the skin. A second probe was present but unattached. A black glove was on his right hand (a second glove was found at the scene).*

Chief Skinner provides a rebuttal to Mr. Gissiner's entire report on the Use of Force citing to the IDFIT investigation and the limited Bodycam. IDFIT officers attended the Autopsy and obtained the preliminary report. Plaintiff reasonably believed the City of Eugene was already in possession of the Autopsy report which was in the custody of the Oregon State Police and unavailable to citizens. Plaintiff had no authority to send defendants documents she did not possess, nor is there a burden on Plaintiff to obtain documents from third party sources or provide redundant material which the defendant already possesses.

9. On August 8, 2022 Plaintiff received a First Request for Production from the City of Eugene requesting 50 separate categories of documents. In none of the documents does the City request the Autopsy Report or any document from the Medical Examiner's Office.

10. The objection to the funeral expenses is confusing insofar as the City first claims it did not receive it and then acknowledges receipt of the documentation on the cost of the cremation and expense associated with Mr. Rodrigues funeral and interment

11. Plaintiff requested copies of the Pre-Hospital Report form from the City in several emails. The report is referenced by IDFIT officers but not attached to the relevant report. Plaintiff still has not received that report.

12. Plaintiff also requested a copy of the Oregon State Police Officer Involved Interview Checklist referenced by the IDFIT investigator prior to taking Tykol's interview. That checklist has not been provided though Plaintiff has requested it.

13. At no time throughout the three years of this litigation has the City requested the supplementation of any missing documentation nor sent any further requests for documentation.

14. I make these statements on my personal knowledge and belief.

Dated this 27th day of August 2025.

                                Respectfully submitted,

                                /s/ Michelle R. Burrows
                                Michelle R. Burrows OSB86160
                                Of Attorneys for Plaintiff