**Ben Miller, OSB #074690**
BMiller@eugene-or.gov
Eugene City Attorney's Office
500 East 4th Avenue, Suite 301
Eugene, OR 97401
Telephone: (541) 682-8447
Facsimile: (541) 682-5414

Of Attorneys for Defendants
Samuel Tykol and City of Eugene

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| **OFELIA HERNANDEZ SANTIAGO,** Personal Representative of the Estate of Eliborio Rodrigues Jr., <br><br> Plaintiff, <br><br> v. <br><br> **SAMUEL TYKOL, JOHN DOE SUPERVISORS 1-3, CITY OF EUGENE,** a municipal subdivision of the State of Oregon, <br><br> Defendants. | Case No: 6:21-cv-01715-MTK <br><br> **DEFENDANTS SAMUEL TYKOL AND CITY OF EUGENE'S HEARING MEMORANDUM** |

Trial has been set for November 17, 2025, with a pretrial hearing scheduled for November 7, 2025. Defendants Samuel Tykol and City of Eugene ("defendants") respectfully submit the following hearing Memorandum.

**POINTS AND AUTHORITIES**

At the pretrial hearing on September 2, 2025, this Court *sua sponte* set an evidentiary hearing to consider the evidence of methamphetamine use by Mr. Rodrigues at the time of his death. Specifically, toxicological tests were performed which established the presence of methamphetamine in his blood and urine. In the case of his blood, tests revealed a blood concentration of 2.2 milligrams/Liter (± 0.3 mg/L). The test results which defendants seek to have admitted are found in Exhibit 250 at pages 2 and 3 but are also appended here.

PAGE 1 – DEFENDANTS SAMUEL TYKOL AND CITY OF EUGENE'S HEARING MEMORANDUM

Testimony will come from Dr. Daniel Davis, the pathologist who ordered the toxicology analysis and completed the autopsy, and from Kaylon Wells, the forensic scientist who performed the tests. It is anticipated that the Court will learn that the tests performed by the Oregon State Police Forensics Laboratory are reliable. It is anticipated that the Court will learn that a concentration of 2.2 mg/L is a high concentration of methamphetamine in the blood. It is anticipated that the Court will learn that a toxic range beginning at 0.15 mg/L, is associated with violent and irrational behavior after intravenous use, and fatalities can occur starting at 1.5 mg/L from oral methamphetamine use and 0.8 mg/L following intravenous use. Logan, B. K., "*Methamphetamine and Driving Impairment*," Journal of Forensic Sciences, JFSCA, Vol. 41, No. 3, May 1996, pg. 458 (appended to this brief).

"Behavioral manifestations of methamphetamine use observed in arrestees were typical and distinctive. They included rapid or confused speech, dilated pupils, agitation, paranoia, rapid pulse, and violent or aggressive demeanor. Sweating, and high temperature were also noted, as were watery-bloodshot eyes. Since amphetamines are not believed to irritate the eyes themselves, this may be related to fatigue. The degree of the effects present generally increased with the blood methamphetamine concentration, with violent behavior being noticeably [sic] more common at higher blood methamphetamine concentrations." *Id*. at pg. 462.

It is anticipated that the Court will also learn that Mr. Rodrigues was affected by the methamphetamine in his system with a blood concentration of 2.2 mg/L. It is anticipated the Court will learn about a correlation between methamphetamine users and violence or suicide, especially for chronic users. Logan BK: *Methamphetamine — Effects on human performance and behavior*; Forensic Sci Rev 14:133, at pg. 143 (2002) (appended to this brief). Finally, it is anticipated that the Court will learn that methamphetamine users have a higher risk of death due to overdose and suffer other health outcomes that impact life expectancy.

The presence of methamphetamine in Mr. Rodrigues' system, and its concentration, are highly relevant for at least three independent reasons: 1) corroborating the defendants' version of events, 2) for comparative fault, and 3) for damages.

PAGE 2 – DEFENDANTS SAMUEL TYKOL AND CITY OF EUGENE'S HEARING MEMORANDUM

A. **Corroborating Defendants' Version of Events.**

First, the fact and degree of the intoxication of Mr. Rodrigues is admissible and relevant on the day of the incident since it goes to the way he acted at the time of the shooting. It is unusual or erratic behavior for a person to assault a police officer. A sober person is not likely to do so. An intoxicated person on a stimulant like methamphetamine is more likely to do so. Such evidence of intoxication is admissible if it tends to corroborate the defendant's version of the decedent's behavior and the actions are disputed. As stated in *Castro v. Cty. of Los Angeles*, 213CV06631CASSSX, 2015 WL 4694070, at *5-6 (CD Cal Aug 3, 2015):

> Notwithstanding the foregoing, evidence of decedent's intoxication may be admissible to corroborate Sergeant Partida's version of events, since decedent's pre-shooting conduct is disputed. In *Boyd v. City & Cnty. of San Francisco,* the Ninth Circuit upheld a ruling permitting evidence that a decedent was under the influence of drugs at the time of a police shooting, since such evidence "was highly probative of his conduct, particularly in light of his alleged erratic behavior...." 576 F.3d 938, 949 (9th Cir.2009). In *Boyd,* decedent was shot and killed by police officers after leading the officers on a high-speed car chase. In the subsequent civil suit brought by decedent's family, the police advanced a "suicide-by-cop" theory, alleging that decedent was "acting erratically, taunting police and goading them to shoot him instead of following police commands." *Id.* at 944; *see also Cotton v. City of Eureka, Cal.,* No. CV 08–04386, 2010 WL 5154945, at *7 (N.D. Cal. Dec. 14, 2010) (admitting evidence of LSD in decedent's system where witnesses "observed that the Decedent's behavior ... at the time of his arrest was erratic and abnormal, and possibly the result of the influence of illegal drugs."); *T.D.W. v. Riverside Cnty.,* No. CV 08–232, 2010 WL 1006618, at *3 (C.D. Cal. Mar. 11, 2010) (finding no error in admission of evidence of decedent's intoxication where defendant deputy alleged, *inter alia,* that "decedent stared at [the deputy] in a manner that suggested he was on drugs ... [and] stared into a spotlight without flinching.").

> Here, defendants allege that decedent's intoxication tends to corroborate Sergeant Partida's contention that decedent made the irrational decision to flee and point a gun at him. It thus appears that, under Boyd, evidence of decedent's intoxication is admissible to corroborate Sergeant Partida's version of events. *See Turner*, 2014 WL 560834, at *3 ("because [decedent's] actions and conduct are in dispute, *Boyd*, and not *Hayes*, controls. However, ... the evidence [of decedent's intoxication] is relevant only to explain [decedent's] conduct and to corroborate the officers' version of events."). Moreover, with a proper limiting instruction to the jury, the risk of unfair prejudice to plaintiffs does not substantially outweigh the probative value of this evidence.

PAGE 3 – DEFENDANTS SAMUEL TYKOL AND CITY OF EUGENE'S HEARING MEMORANDUM

Thus, the evidence is highly relevant to corroborate Sergeant Tykol's version of events for why Mr. Rodrigues would respond the way Sergeant Tykol says he did.

### B. Comparative Fault.

Second, the degree of the intoxication of Mr. Rodrigues is admissible and relevant on the day of the incident since it goes to the way he acted at the time of the shooting for purposes of comparative fault on the negligence claim. This has been defendants' fifth affirmative defense since they filed their answer on March 18, 2022. [Doc. 8]. Plaintiff did not move to strike or for summary judgment against this defense. It even made it into the proposed pretrial order. [Doc. 74]. Defendants have always contended that Mr. Rodrigues' claims were barred by his own fault, including for "taking any controlled substances that were not prescribed" i.e. methamphetamine. Thus, evidence that he was under the influence of methamphetamine at the time of the struggle and shooting is highly relevant to this comparative fault defense to the negligence claim.

### C. Damages.

Finally, Mr. Rodrigues' drug use has probative value on the issue of damages to his ability to become employed and remain employed. Hiring for many businesses is contingent upon passing a drug test, which often includes testing for controlled substances like methamphetamine. It also is relevant to his work life expectancy and earning capacity, both of which affect the calculation of damages. Such evidence is relevant and probative on the issue of damages for future lost income. *Butler v. French*, 83 F.3d 942, 945 (8th Cir. 1996) (*citing Haney v. Mizell Memorial Hospital*, 744 F.2d 1467, 1475 (11th Cir. 1984)). *See also Udemba v. Nicoli,* 237 F.3d at 15 (addressing evidentiary issues in a case alleging excessive force under 42 U.S.C. § 1983 and affirming district court's finding that evidence was relevant to a contested issue in the case — the extent of damages); *Gates v. Rivera,* 993 F.2d 697, 700 (9th Cir.1993) ("Restricted to the issue of damages, the questions as to McGensey's use of drugs were proper, and the district court had discretion to admit them as probative and not unduly prejudicial."); *Lewis v. District of Columbia,* 793 F.2d 361, 363 (D.C. Cir. 1986) (finding that the district court did not commit reversible error in admitting evidence of past drug use and arrests

when the evidence was probative in aiding the jury to fairly measure the extent of damages for the alleged excessive force claim and that its prejudicial effect did not substantially outweigh its probative value).

As stated in *Castro v. Cty. of Los Angeles*, 2015 WL 4694070, at *7 (CD Cal Aug 3, 2015):

> As to damages, however, the Court concludes that decedent's history of drug use is relevant to proof of both economic and noneconomic damages. With regard to noneconomic damages, "[i]f [decedent] had a significant drug problem at the time of the incident, [his] relationship with [his] [wife and children] could have been adversely [a]ffected prior to his death which may be related to [their] loss of consortium and loss of society claims." *Aguilar v. Cnty. of Fresno,* Cal., No. 1:08–CV–1202, 2009 WL 3617984, at *5 (E.D.Cal. Oct. 29, 2009). Further, although plaintiffs appear to disavow that they seek economic damages, as discussed supra, to the extent that they do seek compensation for the "substantial economic damages" they allegedly sustained, SAC ¶ 49, decedent's history of drug use is relevant to his life expectancy. *See Allen v. Toledo,* 109 Cal.App.3d 415, 424 (1980) (in wrongful death action, "[t]he life expectancy of the deceased is a question of fact for the jury to decide [citation], considering all relevant factors including the deceased's health, lifestyle and occupation."). In turn, life expectancy informs the measure of economic damages. *McAsey v. U.S. Dep't of Navy*, 201 F.Supp.2d 1081, 1097 (N.D.Cal.2002) ("In wrongful death actions, damages for pecuniary loss are limited by the life expectancy of the decedent immediately before he sustained the injuries which caused his death." (*citing Redfield v. Oakland Con. St. R. Co.,* 110 Cal. 277, 42 P. 822 (1895))). To the extent that admission of decedent's drug history might unfairly prejudice plaintiffs, the Court will provide the jury with an appropriate limiting instruction.

In addition to life expectancy and work potential, Mr. Rodrigues' drug use affected any reunification with his beneficiaries.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## CONCLUSION

For all these reasons issues relating to Mr. Rodrigues' methamphetamine use are relevant and admissible, even if the Court determines only for limited purposes. Pages 2 and 3 of Defendants' Exhibit 250 should be admitted and testimony about them should be permitted.

DATED this 6th day of November, 2025.

**CITY OF EUGENE**

By: ___s/ Ben Miller___
    Ben Miller, OSB #074690
    BMiller@eugene-or.gov
    Telephone: (541) 682-8447
    Facsimile:  (541) 682-5414

    Of Attorneys for Defendants
    Samuel Tykol and City of Eugene

## CERTIFICATE OF SERVICE

I certify that on this 6th day of November, 2025, I served or caused to be served a true and complete copy of the foregoing **DEFENDANTS SAMUEL TYKOL AND CITY OF EUGENE'S HEARING MEMORANDUM** on the party or parties listed below as follows:

__X__   Via CM / ECF Filing

_____   Via First Class Mail, Postage Prepaid

_____   Via Email

| | |
|---|---|
| Michelle R. Burrows | Anthony Rosta |
| 16869 SW 65th Ave #367 | 795 W 7th Ave |
| Lake Oswego, OR 97035 | Eugene, OR 97402 |
| | |
| Attorney for Plaintiff | Attorney for Plaintiff |

**CITY OF EUGENE**

By:  s/ Ben Miller
Ben Miller, OSB #074690
BMiller@eugene-or.gov
Telephone: (541) 682-8447
Facsimile:  (541) 682-5414

Of Attorneys for Defendants
Samuel Tykol and City of Eugene